**Dennis L. MIGA, Petitioner,**

v.

**Ronald L. JENSEN, Respondent.**

No. 07–0123.

Supreme Court of Texas.

Argued Dec. 14, 2008.

Decided Oct. 23, 2009.

Rehearing Denied Jan. 15, 2010.

---

3. The trial court's order awarding attorney's fees was not challenged on appeal.

Jeffrey S. Levinger, Hankinson Levinger LLP, Ken Carroll, Carrington Coleman Sloman & Blumenthal, P. Jefferson Ballew, Scott P. Stolley, Thompson & Knight, Dallas, TX, Pamela Stanton Baron, Austin, TX, for Petitioner.

Joseph W. Spence, Shannon, Gracey, Ratliff & Miller, L.L.P., Fort Worth, TX,

Claudia Wilson Frost, Pillsbury Withrop Shaw Pittman LLP, William H. Knull, III, Faride Teresa Garcia–Reyes, Rebecca Kerstiens Stewart, Mayer Brown Rowe & Maw LLP, J. Brett Busby, Warren W. Harris, Bracewell & Giuliani LLP, Houston, TX, for Respondent.

David M. Gunn, Beck, Redden & Secrest, L.L.P., Lynne Liberato, Mark Ryan Trachtenberg, Haynes and Boone, LLP, Houston, TX, Douglas W. Alexander, Alexander Dubose & Townsend, L.L.P., Austin, TX, Douglas Laycock, University of Michigan Law School, Ann Arbor, MI, for Amici Curiae.

Chief Justice JEFFERSON delivered the opinion of the Court.

A judgment debtor is entitled to supersede the judgment while pursuing an appeal; this defers payment until the matter is resolved but does not halt the accumulation of interest on the judgment. If the debtor rejects the supersedeas option and does not otherwise suspend enforcement, the creditor may execute on the judgment by seizing bank accounts or other property. To avoid seizure, the debtor may pay the judgment outright, which stops the accumulation of post-judgment interest. But these alternatives to suspending enforcement put at risk the judgment debtor's ability to recoup the seized assets or payment when the appeal is successful. The judgment debtor in this case, under an agreement with the judgment creditor, made a payment toward satisfying the judgment and subsequently won the appeal. The question is whether the creditor may nevertheless keep the money because equitable principles of restitution do not apply. Because we reject the creditor's approach, we affirm the court of appeals' judgment.

# I

## Background

This case stems from Ronald Jensen's breach of an option agreement with Dennis Miga, under which Miga would have been entitled to buy stock in a privately held corporation. The facts and the parties are well known to us. *See Miga v. Jensen* ("*Miga I* "), 96 S.W.3d 207, 209 (Tex.2002). In the initial round of litigation, a jury found for Miga on all issues, and the trial court rendered judgment in his favor for almost $19 million, plus more than $4 million in prejudgment interest. To suspend execution during his appeal, Jensen posted a supersedeas bond in the amount of $25,496,623.39, which subsequent riders increased to $29,500,000. *Id.* at 210. The court of appeals largely affirmed the trial court's judgment. *Id.*

Despite the bond, postjudgment interest continued to mount. Shortly after the court of appeals' decision, the parties entered into an agreed order under which Jensen made "an unconditional tender [to Miga] . . . of the sum of $23,439,532.78 . . . toward satisfaction of the Judgment in order to terminate the accrual of post-judgment interest on that sum." *Id.* Jensen then filed a petition for review with this Court. Miga moved to dismiss Jensen's petition, arguing that Jensen's tender mooted the appeal. We rejected that argument. *Id.* at 212. We noted that, while "explicitly reserving the right to appeal when the judgment is paid would be the safe practice in these circumstances, . . . payment on a judgment will not moot an appeal of that judgment if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile." *Id.* at 211–12. We observed that, in negotiating the order, Jensen discussed its anticipated jurisdictional effect with Miga and that "Jensen informed Miga that he believed the

Agreed Order would not moot his complaint, and that he would continue to pursue appellate review." *Id.* at 212. Although "Miga ... complain[ed] that his refusal to accede to an express reservation of appeal in the agreed judgment and Jensen's removal of that language [from an earlier draft] ma[de] the payment of the judgment misleading," we disagreed:

> While Miga may have believed that Jensen's payment mooted the appeal, he could not have had any reasonable doubt that Jensen believed it did not, or that Jensen intended to pursue the appeal if legally allowed to do so. Consequently, because Jensen's payment was coupled with an expressed intent to pursue his appeal, he did not waive his right to continue to contest the judgment.

*Id.*

On the merits, we held that Miga's contract damages should have been measured by the value of the option at the time of breach, rather than at the time of trial. We reversed the court of appeals' judgment on that issue and rendered judgment for Miga for $1,034,400. *Id.* at 217. Miga moved for rehearing, arguing, among other things, that "[i]f the Court somehow implicitly [held] that Miga has any potential repayment obligation, the Court should grant rehearing and correct that error." The Court denied the motion without comment. On remand, the trial court rendered a modified judgment of $1,879,382.11 in Miga's favor. The judgment stated that it addressed "the issues specifically directed in the mandate of the Texas Supreme Court ... and none other." Accordingly, Jensen's motion seeking to recover the lion's share of the money he had previously paid Miga remained unresolved.

Jensen then sought restitution of $21,560,150.67, the difference between the amount paid to Miga—$23,439,532.78—and the amount owed under the modified judgment. When Miga refused to tender that amount, Jensen filed this suit. The trial court granted Jensen's and denied Miga's motion for summary judgment.[1] A divided court of appeals affirmed. 214 S.W.3d 81. We granted the petition for review.[2] 51 Tex.Sup.Ct.J. 771 (Apr. 18, 2008).

## II

### Restitution After Reversal

Restitution after reversal has long been the rule in Texas and elsewhere. *See, e.g., Bank of U.S. v. Bank of Wash.,* 31 U.S. 8, 17, 6 Pet. 8, 8 L.Ed. 299 (1832) ("On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost."); *Cleveland v. Tufts,* 69 Tex. 580, 583, 7 S.W. 72 (Tex.1888) ("It is settled that money paid upon a judgment afterward reversed may be recovered by the party making the payment."); *see also* RESTATEMENT OF THE LAW OF RESTITUTION ("RESTATEMENT") § 74; RESTATEMENT OF THE LAW (THIRD)—RESTITUTION AND UNJUST ENRICHMENT ("RESTATEMENT (THIRD)") § 18 (Tentative Draft No. 1, 2001)[3]; Charles W. Tainter, 2d., *Resti-*

1. Miga's wife, Mary Patricia Miga, was a defendant in the trial court but has been dismissed by stipulation.

2. We received amicus curiae briefs from Sharon E. Callaway, David M. Gunn, Deborah G. Hankinson, Shannon H. Ratliff, Robert M. "Randy" Roach, Jr., and Stephen G. Tipps, supporting parts of Miga's petition for review; and from Professor Douglas Laycock and the Texas Association of Business, supporting Jensen's response.

3. The Restatement of the Law (Third), Restitution and Unjust Enrichment will replace the original Restatement of Restitution, promulgated in 1936. This draft has been tentatively approved by both the Council and the Mem-

*tution of Property Transferred Under Void or Reversed Judgments,* 9 MISS L.J. 157, 158 (1936) ("The right of the successful party . . . is conditional at least upon his having a good cause of action, and if his judgment is reversed he must, usually, make restitution in some form to the successful appellant."); *Peticolas v. Carpenter,* 53 Tex. 23, 29 (Tex.1880) (noting that "[w]here a judgment for debt is reversed after it has been enforced by execution, and the case is finally decided in favor of defendant, he is certainly entitled to restitution"). The question here is whether this case presents an exception to that rule. Miga contends that it does, for three reasons.

### A. Does the parties' contract preclude restitution?

■ Miga first argues that because the parties' agreement made Jensen's $23,439,532.78 tender "unconditional," the restitution remedy is unavailable. *See* RESTATEMENT § 74 (requiring restitution upon reversal unless it "would be inequitable or the parties contract that payment is to be final"). While it is true that "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory," *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex.2000), here both sides agree that the Agreed Order is silent on restitution. The order provides that "Defendant Ronald L. Jensen ("Jensen") desires to make an unconditional tender to Plaintiff Dennis L. Miga ("Miga") of the sum of $23,439,532.78 (the "Tender Amount") toward satisfaction of the Judgment in order to terminate the accrual of post-judgment interest on that sum."

Many of the parties' arguments here repeat those made last time the case was

before us, and our prior opinion answers most of them. Miga contends that he and Jensen contracted for the payment to be final, but if that were so, we would not have held that Jensen's appeal—despite the payment—was viable. *Miga I,* 96 S.W.3d at 212. We concluded, instead, that the parties agreed to disagree: "[w]hile Miga may have believed that Jensen's payment mooted the appeal, he could not have had any reasonable doubt that Jensen believed it did not, or that Jensen intended to pursue the appeal if legally allowed to do so." *Id.* We agree with the court of appeals that "implicit in reserving a right to appeal is the right to a refund of the money in the event that the judgment is later modified or reversed." 214 S.W.3d at 89. Miga recognized as much in *Miga I,* arguing that "[i]t is fundamentally inconsistent for Jensen to say that his 'unconditional' payment was conditioned on his right to appeal *and seek restitution.*" (Emphasis added.) In this case, he asserts that there is "no language requiring Miga to refund any of the $23.4 million payment in the event the judgment were later reversed or rendered," and Jensen agrees. They are correct—the parties no more agreed that Jensen could not seek reimbursement than they agreed that he could. The situation would be no different had Miga executed on a non-superseded judgment. In that instance, there would be no "agreement" that Jensen could seek restitution and no agreement that he could not, but the right to recover the funds upon reversal of the judgment would nevertheless be established as a matter of law. Because the parties' agreement is silent on this point, it does not displace the restitution-after-reversal rule.

Miga argues that our decision in *Excess Underwriters at Lloyd's, London v.*

bership. *See* http://www.ali.org/index.cfm?fuseaction=projects.proj_ip&projectid=14

(last visited Oct. 21, 2009 and copy available in Clerk of Court's file).

*Frank's Casing Crew & Rental Tools, Inc.,* 246 S.W.3d 42 (Tex.2008), in which we declined to recognize an equitable right of reimbursement, should apply here. We disagree. This case involves restitution upon reversal of a judgment, not insurers seeking restitution from an insured on a third-party claim, against the backdrop of a highly regulated industry. *See Frank's Casing,* 246 S.W.3d at 46–47 (noting that "allowing an insurer to settle claims and then sue its policyholder 'foster[s] conflict and distrust in the relationship between an insurer and its insured'") (quoting *Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County,* 52 S.W.3d 128, 134 (Tex.2000)). Restitution in insurance-related cases involves policy concerns not present here:

> [D]isputes between insurers and policy-holders over the insurer's duty to pay a claim, or to settle or defend a claim brought against the policyholder, present special difficulties for the law of restitution, because the insurer's duty to indemnify and defend is subject to extensive regulation under local law.

RESTATEMENT (THIRD) § 35, cmt. c. (Tentative Draft No. 3, 2004). In addition, in *Frank's Casing,* "the insurance policies spell[ed] out the parties' respective obligations in great detail," *Frank's Casing,* 246 S.W.3d at 50, while the Agreed Order did not address the effect of a successful appeal. We agree with Jensen that *Frank's Casing* is inapposite.

**B. Was Jensen's payment voluntary?**

■ Second, Miga argues that the voluntary payment rule precludes restitution. This common law principle provides that "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to

his liability." *Pennell v. United Ins. Co.,* 150 Tex. 541, 243 S.W.2d 572, 576 (1951) (quoting 40 AM. JUR. § 205 (1942)). It is a defense to a restitution claim. *BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 768–69 (Tex.2005) (citing RESTATEMENT (THIRD) § 6 cmt. e. (Tentative Draft No. 1, 2001)) ("The restitution claim to recover a payment in excess of an underlying liability . . . meets an important limitation in the so-called voluntary-payment rule."). The rule, "widely used by parties and some Texas courts at one time," has diminished in scope, as "the rule's equitable policy concerns have been addressed through statutory or other legal remedies." *Peake,* 178 S.W.3d at 771 (noting that "this Court has affirmatively applied the rule only once in the last forty years, and that holding has itself been modified since"). *But see Dallas County Cmty. College Dist. v. Bolton,* 185 S.W.3d 868, 883 (Tex.2005) (holding that voluntary payment rule barred claim for repayment of student services fee imposed by public junior college district).

■ The voluntary payment rule precludes a party from "pay[ing] out his money, leading the other party to act as though the matter were closed, and then be in the position to change his mind and invoke the aid of the courts to get it back." *Peake,* 178 S.W.3d at 768–69. In *Miga I,* we rejected the notion that the voluntary payment rule mooted Jensen's appeal. *Miga I,* 96 S.W.3d at 211–12. As we made clear, Jensen never led Miga to believe that the matter was closed. His pursuit of an appeal—and stated intent to seek restitution if that appeal was successful—removed any reasonable doubt to the contrary. *Id.; see also Peake,* 178 S.W.3d at 770. The initial filings in this Court in *Miga I* show that the parties appreciated these issues even then. Miga complained that Jensen "cannot reverse course now and seek to recover the payment," while

Jensen responded that the controversy could ultimately be resolved "either by an appropriate order that Miga return the wrongly awarded funds, or by a set-off against any liability that might result in the unlikely event that the Court granted Miga's petition and decided in his favor the issues raised therein."

In one of only two cases in which we have affirmatively applied the voluntary payment rule in the last forty years, we held that a services fee paid by community college students fell within the rule: "In light of the choices retained and [the students'] right to request a waiver of the fees or otherwise protest the imposition of the fee, any coercion that existed was not actual and imminent and did not constitute duress as a matter of law," making the payment voluntary. *Bolton,* 185 S.W.3d at 883. We recognized that certain financial incentives or disincentives, like the fee, do not "transform a choice into coercion." *Id.*

In contrast, Jensen faced not only mounting post-judgment interest but the coercive power of the judgment. In *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 237 (Tex.1982), we hinted at this notion, determining that the voluntary payment rule was inapplicable when a church paid a judgment but made clear its intent to pursue an appeal. We held that the church's payment was made under "implied duress," caused by accruing penalties and interest, as well as the embarrassment the Church would have faced had execution issued against it. *Highland Church,* 640 S.W.2d at 237. The Third Restatement explains it more fully:

> Nor is the restitution claim of the judgment debtor barred by the doctrine of "voluntary payment" if the debtor elects to pay a judgment that he or she regards as invalid, without waiting for the issuance or levy of execution. On the contrary, any payment made in response

to a judgment is treated as a payment made under compulsion, at least for the purpose of permitting the judgment debtor to avoid the consequences that would flow from regarding the payment as "voluntary."

RESTATEMENT (THIRD), § 18, cmt. c; *see also id.* ch. 2, Introductory Note (Tentative Draft No. 1, 2001) (referring to a payment made in compliance with a judgment as "[a] transfer[ ] made under legal compulsion"); RESTATEMENT § 74, cmt. b. (noting coercive effect of judgment).

■ The court of appeals held that the voluntary payment rule did not apply because "Jensen signed the Agreed Order under economic duress." 214 S.W.3d at 92 (noting that "interest on the judgment was accruing at a rate of ten percent, compounded annually"). In *Miga I,* we observed that, "[l]ike Highland Church, Jensen was 'justifiably anxious to avoid the . . . interest which would accrue while the case was on appeal.'" *Miga I,* 96 S.W.3d at 211 (quoting *Highland Church,* 640 S.W.2d at 237). Miga complains that, under *Bolton,* the mere running of interest on a judgment is insufficient to constitute duress, and Jensen's ability to supersede the judgment eliminated any compulsion. But, as outlined above, it is not just the interest but the judgment's coercive effect that make the payment involuntary, regardless of the judgment debtor's means. To avoid execution pending appeal, Jensen could either pay the judgment or make arrangements to suspend its enforcement. *See* TEX.R.APP. P.24.1. His ability to secure a supersedeas bond does not make his payment voluntary. *See* RESTATEMENT § 74, cmt. b. (noting that, upon reversal of a judgment, amounts paid can be recovered "although no execution was issued, and although the payor could have obtained a supersedeas or stay of execution"); RESTATEMENT (THIRD) § 18, cmt. a

(noting that "a party is under no obligation to postpone compliance with a judgment that he seeks to overturn"). When, as here, payment on a judgment is coupled with an expressed intent to appeal when appellate relief is attainable, *see Miga I*, 96 S.W.3d at 212, the voluntary payment rule will not preclude restitution if the judgment is later reversed.

## C. Does Miga's tax payment raise a fact issue on the equities of restitution?

■ Finally, Miga asserts that restitution would be inequitable because, believing the funds to be his, he paid $5 million in income taxes. *See* RESTATEMENT § 74 (requiring restitution upon reversal "unless restitution would be inequitable"). But Miga does not contend that restoring $5 million of the $21 million he received would be inequitable—he argues that restoring *any* of the money would be inequitable. In response to an interrogatory that asked whether Miga contended he should be excused from making restitution "of all or any part of the Payment on the grounds that [he] lack[ed] sufficient means to make restitution in full," Miga answered:

> No. Defendants contend that Plaintiff's claims are barred in their entirety by the express terms of the Rule 11 Agreement between Jensen and Dennis Miga, which provides that the sums Jensen seeks to recover were paid unconditionally to Dennis Miga.

Miga successfully resisted discovery of his net worth on the same basis, and still maintains that the tax payment is an absolute defense to a restitution claim.

Miga's contention is incorrect. Restitution is rooted in principles of unjust enrichment. *See* RESTATEMENT § 1 ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."); RESTATEMENT (THIRD) § 1 (Discussion Draft 2000) ("A person who is unjustly enriched at the expense of another is liable in restitution to the other."). While the law of restitution recognizes a defense based on change of position, the defense generally applies only to the extent that restitution would cause loss to an innocent party, not the judgment creditor. *See, e.g.*, RESTATEMENT § 142, cmt. f. (recognizing change of circumstances defense and providing that "[i]f part of the subject matter is lost or destroyed, the recipient still has a duty of making restitution of the remainder"); *see also id.* § 74, cmt. c. (providing "[n]or is change of position a defense to the creditor").

Moreover, to assess equities, we must also consider Miga's conduct. Miga's tax obligation arose because he exercised control over Jensen's $23,439,532.78 tender. Well aware that Jensen would continue his appellate fight to reverse the judgment, Miga could have opted to decline the payment and await the appellate outcome. Instead, Miga gambled on the strength of his appeal. Jensen's ultimate success meant that the multimillion dollar trial court judgment was, in large part, erroneous. Prohibiting restitution would penalize Jensen for the court's mistake and is inimical to the unjust enrichment principles underlying the doctrine. We can no more fault Jensen for his dogged pursuit of an appellate remedy than reward Miga for wagering on an affirmation of the judgment. The trial court and the court of appeals correctly concluded that, as a matter of law, restitution comports with the equities.

## III

## Conclusion

We affirm the court of appeals' judgment. TEX.R.APP. P.60.2(a).