**AFFIRMED; Opinion Filed July 14, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00339-CV

**PONDERSOSA PINE ENERGY, LLC, NIXON PEABODY, LLP, AND SHANNON, GRACEY, RATLIFF & MILLER, LLP, Appellants**

**V.**

**ILLINOVA GENERATING COMPANY N/K/A ILLINOVA CORPORATION, Appellee**

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-04536

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Stoddart
Opinion by Justice Stoddart

Ponderosa Pine Energy, LLC and its lawyers Nixon Peabody, LLP and Shannon, Gracey, Ratliff & Miller, LLP appeal an adverse judgment rendered following a bench trial. In four issues, appellants argue: (1) the restitution/unjust enrichment claim brought by Illinova Generating Company n/k/a Illinova Corporation is barred by the voluntary payment rule; (2) the trial court erroneously awarded prejudgment interest to Illinova; (3) the permanent injunction prohibiting Ponderosa from commencing a new arbitration against Illinova should be vacated; and (4) the trial court record does not demonstrate that the appellant law firms should be jointly and severally liable for prejudgment and post-judgment interest. We affirm the trial court's judgment.

The parties generally agree on the facts relevant to this appeal. However, they disagree about the legal implications of those facts. Before the case went to trial, the parties filed agreed stipulated facts and an extensive joint exhibit list with the trial court. The trial court issued findings of fact and conclusions of law, along with a judgment in favor of Illinova.

It is necessary to understand the procedural history of the parties' disputes in order to resolve the issues presented in this appeal. This case has its origins in a prior dispute between the parties that the Texas Supreme Court considered in *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518 (Tex. 2014). We incorporate several facts from the supreme court's opinion.

FACTUAL BACKGROUND

Illinova and other entities (the Sellers) sold their interests in a power plant to Enron North America Corp. pursuant to a Purchase Agreement. Enron subsequently assigned its rights under the Purchase Agreement to Ponderosa. Ponderosa borrowed over $200 million from eight banks to finance the purchase.

When a dispute arose between Ponderosa and the Sellers, Ponderosa invoked an arbitration provision in the Purchase Agreement. *Tenaska Energy*, 437 S.W.3d at 520. The provision provided for a three-arbitor panel, with each party selecting one neutral arbitrator and those two arbitrators selecting the third. *Id.* Ponderosa was represented then, as it is now, by appellants Nixon Peabody. *Id.* Ponderosa and Nixon Peabody designated Samuel A. Stern as Ponderosa's chosen arbitrator. *Id.* Following the arbitration, a divided panel found in favor of Ponderosa; Stern voted with the majority.

The panel issued its Arbitration Award on May 7, 2007, awarding $125 million to Ponderosa against the Sellers. Illinova's liability under the adverse Arbitration Award was $16,941,000. The Award required Illinova to pay its "obligations, without interest, on or before

the 30th day following the date of this decision." On the day the Arbitration Award was issued, Ponderosa filed a petition in the 191st District Court to confirm the Award. Ponderosa sought post-judgment interest from June 7, 2007. Ponderosa's counsel also sent a letter to Illinova's counsel stating Ponderosa would seek to recover the full amount due under the Award, plus interest from June 7, 2007, forward. Illinova filed its Original Answer and Counterclaim on June 6, 2007, requesting the 191st District Court vacate the Arbitration Award.

On June 1, 2007, Illinova's counsel contacted Ponderosa's counsel regarding a potential payment of Illinova's portion of the Arbitration Award. The June 1 letter stated that although Illinova might pay the $16,941,000 "to avoid the potential interest that may accrue on the sum" while the case is pending, Illinova reserved its right to challenge the award and seek recovery of the money plus interest. On June 7, 2007, Illinova made a wire transfer of $16,941,000 to Ponderosa through Nixon Peabody's client trust account (Wired Funds). On the same day, Illinova's counsel sent a letter to Ponderosa's counsel stating:

> Please be advised that [Illinova] has paid the [Wired Funds] under protest to avoid the potential interest that may accrue on that sum while the above-referenced case is pending. As you know, [Illinova] has filed a counterclaim seeking various relief from the district court, including an order vacating the Award. [Illinova] explicitly reserves, and does not waive, its rights to (a) challenge the Award, both in the district court and in any subsequent appeals and (b) if the challenge is successful, recover the [Wired Funds] plus interest from Ponderosa.

In October 2007, Illinova filed an amended answer and counterclaim in the 191st District Court and requested the court vacate the Arbitration Award because, among other things, Stern was not an impartial arbitrator. *See Tenaska Energy*, 437 S.W.3d at 521. Illinova asserted claims for restitution, money had and received, and unjust enrichment, and sought to recover the Wired Funds. Illinova subsequently abandoned these claims without prejudice and reasserted them in a new action in the 14th District Court—which is the case now on appeal before us.

–3–

After extensive discovery and a hearing, the 191st District Court vacated the Arbitration Award. The court filed findings of fact and conclusions of law, some of which the supreme court discussed in its opinion. The 191st District Court found that Nixon Peabody recommended Stern as an arbitrator in three other arbitrations. *See id.* Stern also was a director of and owned stock in a litigation services company, LexSite, that sought business from Nixon Peabody, and all of Stern's contacts with the 700-lawyer firm were with the two lawyers who represented Ponderosa in its dispute with the Sellers. *See id.* at 520. The 191st District Court concluded there was a "a calculated, deliberate attempt to minimize the relationship" between Stern and the Nixon Peabody lawyers who represented Ponderosa in the arbitration. *Id.* at 523. Further:

- The relationship between LexSite and the lawyers at Nixon Peabody "was material rather than trivial and the undisclosed information might yield a reasonable impression that Stern was not impartial";

- "It is very troubling that [Ponderosa's] counsel edited and modified Arbitrator Stern's disclosures";

- Ponderosa's counsel "assisted in creating the misimpression regarding Arbitrator Stern's contacts" with Nixon Peabody's lawyers;

- "It is very clear that [Ponderosa's] counsel was attempting to stack the deck in favor of their client";

- "The Court strongly disapproves of the tenor of the *ex parte* communications between Arbitrator Stern and [Ponderosa's] counsel"; and

- Stern and Ponderosa's counsel "deliberately misled opposing counsel and obfuscated Arbitrator Stern's relationships or conflicts regarding" the arbitration.

The Texas Supreme Court agreed that Stern failed to disclose the extent of his relationship with LexSite and the two lawyers who represented Ponderosa in the arbitration, and

the undisclosed information "is not trivial and might have conveyed an impression of Stern's partiality toward [Nixon Peabody's] client to a reasonable person." *Id.* at 526. The supreme court concluded the 191st District Court correctly vacated the Arbitration Award and required a new arbitration. *Id.* at 529. The court issued its opinion on May 23, 2014, and the mandate issued on August 22, 2014.

While the decision of the 191st District Court's was on appeal, Illinova's counsel sent a demand letter to Ponderosa's counsel seeking repayment of the Wired Funds plus interest on or before April 16, 2010. On April 16, 2010, Illinova filed the instant suit in the 14th District Court seeking restitution for the Wired Funds, which it asserted were paid under protest and subject to Illinova's right to pursue litigation to vacate the arbitration award. Citing the Texas Supreme Court's opinion in *Miga v. Jensen*, 299 S.W.3d 98 (Tex. 2009), Illinova claimed it paid the Wired Funds "to avoid the accrual of post-judgment interest pending resolution of the litigation." The 14th District Court abated the case pending the outcome of the appeal, and ordered the Wired Funds placed into an escrow account. The 14th District Court reinstated the suit after the Texas Supreme Court issued its mandate in *Tenaska Energy*.

On December 15, 2014, the case proceeded to trial. The 14th District Court entered an amended final judgment in favor of Illinova. The trial court ordered the funds in the escrow account be disbursed to Illinova because the voluntary payment rule does not preclude restitution to Illinova under the facts of the case. The judgment states that Ponderosa, Nixon Peabody, and Shannon Gracey are jointly and severally responsible for paying prejudgment and post-judgment interest to Illinova. This appeal followed.

## A.      Voluntary Payment Rule

In their first issue, Ponderosa and its lawyers argue Illinova's attempt to recover the Wired Funds is barred by the voluntary payment rule because Illinova paid the Wired Funds to Ponderosa with full knowledge of all the facts.  Appellants assert the voluntary payment rule applies for two reasons: (1) Illinova was not suffering from the coercive effects of a judgment when it paid the Wired Funds and (2) Ponderosa did not agree the Wired Funds would be refunded if the Arbitration Award were reversed on appeal.  Therefore, appellants assert, the payment was voluntary and Illinova's restitution claim must fail.  We disagree.

### 1.      Law on Voluntary Payment

"Restitution after reversal has long been the rule in Texas and elsewhere." *Miga v. Jensen*, 299 S.W.3d 98, 101 (Tex. 2009) (*Miga II*).  However, the common law principle of the voluntary payment rule provides that "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Id.* at 103.  The voluntary payment rule is a defense to a restitution claim. *Id.*

The purpose of the rule is to preclude a party from "paying out his money, leading the other party to act as though the matter were closed, and then to be in the position to change his mind and invoke the aid of the courts to get it back." *Id.*; *see also Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (*Miga I*).  When a party expressly states his intention to appeal and seek restitution if that appeal is successful, there is no doubt that the matter is closed and the party who paid money will be entitled to restitution. *See Miga II*, 299 S.W.3d at 103.  When a party makes a payment "under economic duress implied by the threat of statutory penalties and accruing interest," the payment is not voluntary and that party will be entitled to restitution if the

award is reversed on appeal. *See Miga I*, 96 S.W.3d at 211 (discussing *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex. 1982)).

2.      *Unchallenged Findings of Fact*

We initially note that Ponderosa's brief addressing its first issue challenges several of the trial court's conclusions of law relating to the voluntary payment rule, but Ponderosa does not challenge any of the trial court's findings of fact on this issue. Unchallenged findings are binding on the parties and appellate court. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.); *Smith Protective Servs., Inc. v. FedEx Nat. LTL, Inc.*, No. 05-11-00715-CV, 2013 WL 241938, at *4 (Tex. App.—Dallas Jan. 23, 2013, no pet.).

The trial court's unchallenged findings of fact include: (1) interest would begin to accrue on the Arbitration Award if it was not paid on or before the thirtieth day following the date of the decision; (2) Illinova "paid the Wired Funds under protest while expressly reserving the right to challenge the Arbitration Award on which the payment was made and communicating its intent to seek the review and reversal of the Arbitration Award"; and (3) the June 7, 2007 letter from Illinova's counsel to Ponderosa's counsel "was written notice of [Illinova's] claim to recover the Wired Funds if [Illinova] was successful in challenging the Arbitration Award. As of June 7, 2007, [appellants] were on notice of [Illinova's] intent to seek recovery of the Wired Funds, plus interest."

3.      *Payment Made Pursuant to an Arbitration Award*

Ponderosa's first argument in favor of the application of the voluntary payment rule is that Illinova paid the Wired Funds in response to the Arbitration Award and not a judgment. Because Illinova was not laboring under the coercive effects of a judgment, Ponderosa asserts the payment was voluntary.

It is undisputed that Ponderosa had not reduced the Arbitration Award to a judgment when Illinova paid the Wired Funds. However, it also is uncontested that the Arbitration Award ordered the Sellers, including Illinova, to pay their obligations under the Award on or before the thirtieth day following the date of the decision. After that, interest would begin to accrue. Ponderosa filed a petition to confirm the Arbitration Award the same day that the Award was issued and requested post-judgment interest from June 7, 2007.

In light of the terms of the Arbitration Award, awarding $16,941,000 against Illinova and providing for the payment of interest, and Ponderosa's immediate effort to confirm the Award, Illinova was justifiably anxious to avoid accruing interest. *See Miga I*, 96 S.W.3d at 211 (quoting *Highland Church*, 640 S.W.2d at 237); *see also Overdeer v. Travis County*, 03-05-00179-CV, 2005 WL 2650144, at *1 (Tex. App.—Austin Aug. 16, 2005, no pet.) ("The supreme court has held payments made to avoid interest and penalties were not voluntary under the rule and did not extinguish the controversy."). The supreme court has stated that a party must be able to halt the accrual of post-judgment interest yet still preserve its appellate rights. *Miga I*, 96 S.W.3d at 211. This is what Illinova sought to do by transferring the Wired Funds. As the *Miga I* court recognized, a party who "wishes to avoid the accrual of post-judgment interest, particularly on a multi-million dollar judgment" must be able to do so without "fear of a Hobson's choice—that is, that the party might presumptively waive its appellate prospects." *Id.* Yet this is the Hobson's choice to which Ponderosa would put Illinova: either suffer accruing interest on a multi-million dollar Arbitration Award or waive its appellate rights. The voluntary payment rule is not so harsh. Rather, the voluntary payment rule permits the procedure followed by Illinova: reserving the right to appeal when the payment is made. *See id.* ("explicitly reserving the right to appeal when the judgment is paid would be the safe practice in these circumstances.").

The record shows Illinova paid the Wired Funds to stop the accrual of post-judgment interest while clearly expressing its intent to exercise its right of appeal. As the trial court found, and Ponderosa has not challenged, Illinova "paid the Wired Funds under protest while expressly reserving the right to challenge the Arbitration Award on which the payment was made and communicating its intent to seek the review and reversal of the Arbitration Award." Illinova's intention to seek an order vacating the Arbitration Award in the 191st District Court, challenge the Arbitration Award through appeal, and recover the Wired Funds plus interest was clear in its June 1 and June 7 letters. Illinova did not mislead its opponent into believing the controversy was over and then contest the payment and seek recovery. *See id.*

Appellants do not cite any authority that expressly requires a debt have been reduced to a judgment before a payment is made in order for the paying party to avoid the payment being considered a voluntary payment and to benefit from the longstanding rule that restitution generally follows a reversal. Although most cases discussing the voluntary payment rule involve payments made after a judgment is rendered, we have not found any cases announcing the rule that Ponderosa advances. In *Miga II*, the court did not state the money must pay off a judgment—it instead referred to money paid "on a claim of right." *Miga II*, 299 S.W.3d at 103.

Texas courts have considered whether to apply the voluntary payment rule to payments made to satisfy debts owed for reasons other than the existence of a valid judgment. *See generally Lowenberg v. City of Dallas*, 261 S.W.3d 54, 59 (Tex. 2008) (payment of city fee pursuant to city ordinance not voluntary when nonpayment of fee was Class C misdemeanor); *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 870 (Tex. 2005) (payment of student services fee without duress was voluntary); *State v. Akin Prods. Co.*, 286 S.W.2d 110, 111–12 (Tex. 1956) (party may seek reimbursement of illegal taxes paid under duress); *Union Cent. Life Ins. v. Mann*, 158 S.W.2d 477, 479 (Tex. 1941) (same); *Nat'l Biscuit Co. (Nabisco) v. State*, 135

S.W.2d 687, 692–93 (Tex. 1940) (person paying illegal tax voluntarily, without duress, lacks valid claim for repayment); *McDaniel v. Town of Double Oak*, No. 02-10-00452-CV, 2012 WL 662367, at \*5 (Tex. App.—Fort Worth Mar. 1, 2012, pet. denied) (collecting cases); *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd*., 179 S.W.3d 589, 612 (Tex. App.—Austin 2005, pet. denied) (payment of civil penalty accompanied by letter indicating party's intention to appeal did not moot controversy). None of these cases conclude the voluntary payment rule applies or does not apply because of the existence of a judgment.

Ponderosa cites *Miga II* to support its argument that a party must have faced the coercive power of a judgment when making its payment. In *Miga II*, Jensen, the debtor, successfully sought reimbursement for the money he paid because he faced mounting post-judgment interest and the coercive power of the judgment. *See Miga II*, 299 S.W.3d at 104. Ponderosa argues this creates a two-part test that Illinova cannot meet: (1) mounting post-judgment interest and (2) coercive power of a judgment. We do not consider Illinova's position markedly different from Jensen's. Although the supreme court stated that Jensen faced the coercive power of a judgment, the judgment holder could not execute on the judgment because Jensen posted a supersedeas bond. *See id*. at 100. The judgment against Jensen was not subject to execution when he made the payment, but he did face mounting post-judgment interest. Although Illinova did not risk the immediate threat of execution because the Award had not been reduced to a judgment, Ponderosa was taking steps to confirm the Award when Illinova tendered the Wired Funds.

Like Jensen, Illinova faced mounting post-judgment interest on the Arbitration Award, and it paid the Wired Funds clearly under protest. "When, as here, payment on a judgment is coupled with an express intent to appeal when appellate relief is attainable, the voluntary payment rule will not preclude restitution if the judgment is later reversed." *Id.* at 105 (internal citation omitted).

We decline to hold that for a party to be entitled to restitution after reversal—that is, to avoid the effect of the voluntary payment rule—that the payment must be made after a judgment is rendered. The application of the voluntary payment rule is no more applicable to the case before us than it was in *Miga II* when the debtor faced a superseded judgment and accruing interest. Because the Arbitration Award was vacated, Illinova is entitled to restitution.

4.      *Ponderosa Did Not Agree to Accept the Wired Funds*

Ponderosa's second argument is that it did not agree to accept the Wired Funds on the terms proposed by Illinova and, therefore, any reservation of rights to appeal by Illinova were not effective. Ponderosa asks that we read Illinova's June 1 letter in conjunction with its reply on June 4, 2007, to conclude the Wired Funds were a voluntary payment. On June 1, 2007, Illinova's counsel contacted Ponderosa's counsel about paying the Wired Funds and stated in part: "[i]f Ponderosa is willing to accept the [$16,941,000.00] and agrees to the termination of the accrual of potential interest on the amount paid, then it should provide [Illinova's counsel] with written wiring instructions and a signed W-9 Form for tax reporting purposes." Ponderosa's counsel replied three days later:

> We have authority to accept on behalf of Ponderosa the $16,941,000.00 from [Illinova] in full payment and satisfaction of the amount due and owing under the [Arbitration Award].
> . . .
> We are not authorized to accept the tender of the $16.9 million, as you proposed in your June 1 letter, pending the outcome of Illinova's potential motion to vacate the Award prior to reaching agreement with you on the terms of an escrow agreement acceptable to Ponderosa, Illinova and Nixon Peabody.

Ponderosa's June 4, 2007 letter included wiring instructions, but not a W-9 Form requested by Illinova. Following some email correspondence between the lawyers, Ponderosa's counsel provided the W-9 Form. From this correspondence, Ponderosa urges us to conclude that there was no agreement to repay the Wired Funds if the Arbitration Award were reversed and, thus, the Wired Funds were a voluntary payment. We disagree.

–11–

We have not found any Texas cases requiring the parties reach an agreement that the funds may be recovered once paid. Rather, the *Miga* cases show that restitution is available when the parties do not agree about the impact of the payment. *See Miga II*, 299 S.W.3d at 102 ("[T]he parties no more agreed that Jensen could not seek reimbursement than they agreed that he could."). The *Miga* parties were not in agreement about the impact of the payment, but because the payor reserved his right to appeal, the payment did not "displace the restitution-after-reversal rule." *See id.* (discussing *Miga I*). The facts here show that Ponderosa knew and has always known the Wired Funds were paid under protest and for the purpose of stopping the accrual of post-judgment interest and Illinova was preserving its rights to restitution of the Wired Funds. Based on the *Miga* cases, we conclude the lack of agreement between Illinova and Ponderosa does not preclude Illinova from recovering its payment to Ponderosa.

    *5.     Mootness*

The 14th District Court's findings of fact state: "Throughout the litigation in *Ponderosa Pine Energy, LLC v. Tenaska Energy, Inc., et al.*, Ponderosa never claimed that Illinova's payment of the Wired Funds was voluntary or the settlement of the claims asserted in the original arbitration proceeding." This finding supports our conclusion that the Wired Funds were not an unrecoverable voluntary payment.

Under Texas law, a judgment debtor's voluntary payment and satisfaction of an adverse judgment moots the controversy, waives the debtor's right to appeal, and requires dismissal of the case. *Miga I*, 96 S.W.3d at 211. A court cannot decide a case that has become moot during the pendency of the litigation. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012). If the Wired Funds were a voluntary payment, as Ponderosa now contends, then the controversy between Ponderosa and Illinova that the Texas Supreme Court considered in *Tenaska Energy*

–12–

was moot, and the supreme court lacked jurisdiction to consider Illinova's arguments.[1] After reviewing the *Tenaska Energy* opinion, we conclude the supreme court did not consider the dispute between Ponderosa and Illinova to be moot, further indicating the Wired Funds did not constitute a voluntary payment.

### 6. Conclusion

We conclude appellants failed to show that Illinova's act of tendering the Wired Funds constituted a voluntary payment of the Arbitration Award. The longstanding rule of restitution after reversal applies, and the trial court did not err by finding that Illinova's restitution claim is not barred by the voluntary payment rule. We overrule appellants' first issue.

### B. Accrual of Prejudgment Interest

In their second issue appellants argue the trial court erred by awarding prejudgment interest to Illinova based on the date it paid the Wired Funds to Ponderosa (June 7, 2007) rather than based on the date the Texas Supreme Court issued its mandate (August 22, 2014). Appellants make two arguments: (1) Illinova's June 7 letter was not a notice of a claim sufficient to trigger the running of prejudgment interest under *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998) and (2) because Illinova's claim for restitution is based on the Arbitration Award being vacated, the claim did not accrue until the Texas Supreme Court issued its mandate (August 22, 2014). At that time, the funds were in an escrow account. Therefore, Ponderosa argues, it should not be required to pay prejudgment interest.

---

[1] The supreme court's *Tenaska Energy* opinion addresses arguments made by Illinova and the other Sellers. We do not state that the supreme court would have lacked jurisdiction over the entire appeal—we limit our consideration to arguments brought by Illinova in the *Tenaska Energy* appeal.

–13–

### 1. Law on Prejudgment Interest

There are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute. *Johnson & Higgins*, 962 S.W.2d at 528. When, as here, no statute controls the award of prejudgment interest, whether to award prejudgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy when making that decision. *Poly Trucking, Inc. v. KDT Exp., Inc.*, No. 05-09-00078-CV, 2010 WL 3386593, at *4 (Tex. App.—Dallas Aug. 30, 2010, no pet.); *see also DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.) (review award of prejudgment interest for abuse of discretion); *Bufkin v. Bufkin*, 259 S.W.3d 343, 356 (Tex. App.—Dallas 2008, pet. denied) (same). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and failed to do so. *Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 576 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)).

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015). Prejudgment interest accrues from the earlier of: (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed, and until the day before the judgment. *Long v. Castle Tex. Prods. Ltd. P'ship*, 426 S.W.3d 73, 77 (Tex. 2014) (citing *Johnson & Higgins,* 962 S.W.2d at 531). "A 'claim' is "a demand for compensation or an assertion of a right to be paid." *Johnson & Higgins*, 962 S.W.2d at 531 (citing *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied); BLACK'S LAW DICTIONARY 247 (6th ed. 1991) (a "claim" is a "demand for money or property as of right")). A defendant has notice of a claim for purposes of prejudgment interest only if the plaintiff's written notice communicates that the plaintiff is

claiming a right to compensation and provides enough information that the defendant could plausibly settle the claim without incurring interest. *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. filed) (citing *Johnson & Higgins*, 962 S.W.2d at 531; *Owens–Ill., Inc. v. Estate of Burt*, 897 S.W.2d 765, 769 (Tex. 1995)).

2.      *Analysis*

The trial court's unchallenged findings include that prejudgment interest is available in this restitution action and "[j]udicial relief from the Arbitration Award was available and attainable by [Illinova] at the time it paid the Wired Funds." Appellants do not challenge the trial court's finding that their "intentional misconduct contributed to their unfettered use and benefit of the Wired Funds for more than three years" during which time Illinova was "deprived of the use and benefit" of those funds. It concluded that prejudgment interest would compensate Illinova for the "lost use of the money" from the time its claim accrued to the date the Wired Funds were deposited into the Escrow Account.

Exercising its discretion, the trial court could conclude the June 7 letter was a written demand for compensation or assertion of the right to be paid. *See Johnson & Higgins*, 962 S.W.2d at 531. Through Illinova's June 7 letter, Ponderosa received written notice of Illinova's claim for compensation: the letter states the Wired Funds were transferred under protest, Illinova sought relief from the district court, including an order vacating the Arbitration Award, and Illinova would seek to recover the Wired Funds plus interest from Ponderosa. Because the June 7 letter was a written assertion of a right to be paid the amount of the Wired Funds, we cannot say appellants have shown the trial court abused its discretion by determining prejudgment interest began to accrue 180 days after Ponderosa received the letter. In so far as appellants argue that Illinova's claim did not accrue until August 22, 2014, appellants failed to challenge

–15–

the trial court's contrary finding that "[j]udicial relief from the Arbitration Award was available and attainable by [Illinova] at the time it paid the Wired Funds." *See Rich*, 274 S.W.3d at 884; *Smith Protective Servs.*, 2013 WL 241938, at *4 (unchallenged findings binding on parties and appellate court). The unchallenged finding supports the trial court's judgment.

### 3. Conclusion

We overrule appellants' second issue.

## C. Injunctive Relief

In their third issue, appellants assert the trial court erred by issuing a permanent injunction prohibiting Ponderosa from commencing another arbitration against Illinova and the injunction should be vacated. On November 20, 2014, Ponderosa initiated a new arbitration proceeding against Illinova and the other Sellers. The parties' stipulated facts state that in the letter demanding the new arbitration, appellants' counsel alleges the liabilities arise from the same facts and contractual provisions at issue in the first arbitration—that is, the demand asserts the same bases for liability that Ponderosa contends were settled by Illinova's voluntary payment of the Wired Funds. The trial court stated that if Ponderosa successfully appeals the trial court's judgment, "it is unlikely that any new arbitration proceedings against Illinova would be necessary." Allowing Ponderosa to proceed with a second arbitration would "require Illinova to take imminent, costly actions in the new arbitration proceeding." There is no mechanism or legal right for Illinova to recover its attorney's fees and expenses if the new arbitration is unnecessary. The trial court's amended final judgment includes a permanent injunction requiring Ponderosa to withdraw its statement of claim and demand for arbitration and refrain from taking any actions to initiate a new arbitration against Illinova until the case before us, including all appeals, is concluded.

*1.      Law on Permanent Injunctions*

A permanent injunction is an equitable remedy.  *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied).  Whether to grant a permanent injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the trial court clearly abused its discretion.  *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 350 (Tex. App.—Dallas 2015, no pet.); *Noell v. City of Carrollton*, 431 S.W.3d 682, 712 (Tex. App.—Dallas 2014, pet. denied).  The trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case.  *Leibovitz*, 465 S.W.3d at 350.

An applicant seeking a permanent injunction must demonstrate (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law.  *See id.* (citing *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 970 (Tex. App.—Dallas 2013, no pet.)).  The purpose of an injunction is to prevent ongoing or imminent injuries.  *In re Hardwick*, 426 S.W.3d 151, 159 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Whitaker v. Dillard*, 16 S.W. 1084, 1085 (Tex. 1891); *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Generally, the purpose of injunctive relief is to halt wrongful acts that are either threatened or in the course of accomplishment.")).  Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities.  *Noell*, 431 S.W.3d at 712 (citing *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 383-84 (Tex. App.—Dallas 2009, no pet.)).

*2.    Analysis*

In this appeal, Ponderosa simultaneously argues Illinova settled the claims against it by voluntarily paying the Wired Funds to Ponderosa and the trial court erred by enjoining it from arbitrating the exact same claims. Ponderosa asserts in its appellate brief that the case before us on appeal and the arbitration it seeks to continue are simply two pieces of litigation addressing separate claims in different forums between the same parties. Yet Ponderosa also recognizes that if this Court were to conclude the Wired Funds were a voluntary payment, Illinova would be released from any liability to Ponderosa; Ponderosa states that Illinova's payment of the Wired Funds would be "made in satisfaction of Ponderosa's indemnity claim."

As the trial court's unchallenged findings show, the issues before the Court now are related to and intertwined with the claims Ponderosa seeks to arbitrate. Whether the claims Ponderosa seeks to arbitrate are settled is dependent upon the outcome of the appeal now before this Court. The trial court acted within its discretion by concluding that Ponderosa seeking arbitration of unripe claims that are the same as those that may be resolved in this litigation is improper and wrongful.

Illinova incurred costs of $500,000 to $1 million to defend the prior arbitration which looked at the same issues. There is evidence in the record that if Illinova is forced to proceed with the second arbitration, which Ponderosa desires to begin immediately, it will incur costs and fees to defend itself and it has no mechanism by which to recover those expenses. *See Noell*, 431 S.W.3d at 712 (injury is irreparable if injured party cannot be adequately compensated in damages). Yet that arbitration may be unnecessary, and Illinova will have needlessly incurred costs and fees that it cannot recover. Ponderosa argues that incurring costs and fees are monetary damages and do not meet Illinova's burden to show irreparable injury. However, although the amount of money Illinova would spend on the second arbitration is quantifiable, it

is uncontested that Illinova cannot recover its legal fees and costs if the second arbitration were to proceed unnecessarily. The money spent by Illinova on a potentially duplicative arbitration would not be restored. Illinova would have no adequate remedy at law because the Purchase Agreement does not give Illinova a right to recover its costs and fees from Ponderosa if the second arbitration was unnecessary.

The balance of equities favors Illinova. Illinova finds itself in this position because of bad acts by Ponderosa and its counsel during the first arbitration. As the trial court found, and as quoted by the Texas Supreme Court, Ponderosa's counsel edited and modified Arbitrator Stern's disclosures, assisted with creating a misimpression of Stern's contacts with Nixon Peabody's lawyers, and failed to disclose information that might yield a reasonable impression that Arbitrator Stern was not impartial. As the 14th District -Court stated: appellants' bad faith conduct contributed to the issuance of the Arbitration Award and its subsequent vacator. Thus, the parties inconvenienced or harmed by the injunction, appellees, are the same parties whose bad faith conduct caused the prior Arbitration Award to be reversed.

*3. Conclusion*

We conclude appellants have not shown the trial court abused its discretion by enjoining Ponderosa from immediately pursuing a second arbitration to determine the controversy Ponderosa now asserts became moot after Illinova transferred the Wired Funds. We overrule Ponderosa's third issue.

**D. Joint and Several Liability of Law Firms**

In their fourth issue, appellants argue there is no evidence to support the provision in the judgment finding the law firm appellants Nixon Peabody and Shannon Gracey jointly and severally liable for prejudgment and post-judgment interest.

Our briefing rules require an appellant's brief to contain a clear and concise argument with appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(i). An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review. *Strange v. Continental Cas. Co*., 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied). We have no duty to perform an independent review of the applicable law to determine if the trial court erred. *Sisavath v. Oates*, No. 05-15-00131-CV, 2016 WL 1254121, at *9 (Tex. App.—Dallas Mar. 31, 2016, pet. filed) (mem. op.) (not designated for publication) (citing *Strange*, 126 S.W.3d at 678). An appellant's failure to cite legal authority or provide substantive analysis of a legal issue results in waiver of the complaint. *Id.* (citing *Fredonia State Bank v. Gen. Am. Life Ins. Co*., 881 S.W.2d 279, 284 (Tex. 1994); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.)).

Appellants' fourth issue does not cite any authority supporting its contention that Nixon Peabody and Shannon Gracey should not be held jointly and severally liable for pre- and post-judgment interest. Although appellants make statements such as "[i]t is axiomatic that a party can only seek restitution from the party to whom the funds were tendered" and "Nixon Peabody and Shannon Gracey are not liable to Illinova for anything," they cite no legal authority to support their arguments. They also assert there is "no evidence to support the provision in the judgment" finding them jointly and severally liable with Illinova but do not even cite the standard of review for a no evidence point of error.[2]

---

[2] Further, in 2010, the trial court entered its Revised Order Sustaining Defendants' First Amended Plea in Abatement. The heading of the order identifies three parties as defendants in the action: Ponderosa, Nixon Peabody, and Shannon Gracey. The order states in part:

> The Court, having considered the Plea in Abatement, the evidence submitted by the parties, and the arguments of counsel, finds that the Plea in Abatement should be sustained, based, in part, on the representation of defense counsel that the financial institutions owning an interest in Ponderosa Pine Energy, LLC, along with the other defendants, will pay prejudgment interest if such is included in the final judgment in favor of Plaintiffs in this action, unless Defendants stay the execution of the judgment pending an appeal. Defense counsel's representation is without prejudice to Defendants' right to assert any and all defenses to any and all claims in this action, including Plaintiff's claim that Defendants are liable for any prejudgment interest.

The trial court's order includes a footnote following the name "Ponderosa Pine Energy, LLC" in the sentence above. The footnote lists the eight banks that own Ponderosa.

Because appellants failed to cite any authority, discuss applicable law, or apply the law to any facts, we conclude their fourth issue is inadequately briefed and they have waived this argument on appeal. *See id.*

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
150339F.P05                                                                       JUSTICE

---

The trial court's order clearly states the defendants, as well as the eight financial institutions owning interests in Ponderosa, would be responsible for prejudgment interest if such interest was included in the final judgment. The parties' stipulated facts filed in the 14th District Court state that Ponderosa, Nixon Peabody, and Shannon Gracey are the "proper defendants" in the lawsuit. The plea in abatement, the amended plea in abatement, and the memorandum of law in support of the amended plea in abatement were filed by the three defendants, including Nixon Peabody and Shannon Gracey. Further, we note that Nixon Peabody and Shannon Gracey did not object to the trial court's order granting their plea in abatement or otherwise request the trial court amend its order to exclude them from the term "defendants" who are responsible for prejudgment interest. We conclude the provision in the trial court's final judgment that the law firms Nixon Peabody and Shannon Gracey jointly and severally liable for prejudgment interest is supported by the record.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PONDERSOSA PINE ENERGY, LLC,
NIXON PEABODY, LLP, AND
SHANNON, GRACEY, RATLIFF &
MILLER, LLP, Appellants

No. 05-15-00339-CV     V.

ILLINOVA GENERATING COMPANY
N/K/A ILLINOVA CORPORATION,
Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-04536.
Opinion delivered by Justice Stoddart.
Justices Bridges and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Illinova Generating Company n/k/a Illinova Corporation recover its costs of this appeal from appellants Ponderosa Pine Energy, LLC, Nixon Peabody, LLP and Shannon, Gracey, Ratliff & Miller, LLP.

Judgment entered this 14th day of July, 2016.