

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00182-CV

CENTRAL TEXAS CATTLEMEN'S ASSOCIATION, APPELLANT

V.

KENNETH L. HAEDGE, DALE C. TIPPIT, DENVER TIPPIT,
CASE S. JONES, AND CLINTON H. SHED, APPELLEES

On Appeal from the 52nd District Court
Coryell County, Texas[1]
Trial Court No. DC-15-43362, Honorable Trent D. Farrell, Presiding

June 30, 2019

OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant, Central Texas Cattlemen's Association (CTCA), appeals the trial court's July 17, 2018 order denying the release of a $132,400 supersedeas bond posted by appellees, Kenneth L. Haedge, Dale C. Tippit, Denver Tippit, Case S. Jones, and Clinton

---

[1] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Tenth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

H. Shed (collectively, "the Haedge group"), to CTCA.[2] We reverse the trial court's order and render the order that the trial court should have entered.

## Factual and Procedural Background

A detailed presentation of the factual and procedural history underlying the present dispute may be found in our October 11, 2016 opinion. *See Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 07-15-00368-CV, 2016 Tex. App. LEXIS 11092, at *1-12 (Tex. App.—Amarillo Oct. 11, 2016, pet. denied) (mem. op.).

Briefly, the Haedge group held shares in CTCA and were allowed to graze cattle in proportion to its shares on Fort Hood property under a lease between the United States Army and CTCA. A dispute arose when it was alleged that the Haedge group had taken actions on the leasehold that violated the terms of the lease and jeopardized CTCA and its member's right to continue to graze cattle on the Fort Hood property. After the Haedge group was noticed, a meeting was held at which CTCA, through its Board of Directors, voted to cancel the Haedge group's shares in CTCA. Consequently, the Haedge group brought suit against CTCA alleging fraud, conversion, and breach of contract. The trial court granted CTCA summary judgment as to all issues other than whether the Haedge group was afforded due process in the manner through which their shares were

---

[2] The initial order entered by the trial court was not final because it indicated that Shed owed certain assessments that were to be resolved by affidavit. Since this fact issue was not resolved prior to entry of the order, we abated the appeal and remanded it to the trial court to determine whether it intended the order to be final. *See Cent. Tex. Cattlemen's Ass'n v. Haedge*, No. 07-18-00182-CV, 2018 Tex. App. LEXIS 5317, at *1 (Tex. App.—Amarillo July 12, 2018, order) (per curiam). On remand, the trial court ordered that CTCA was entitled to recover $7,000 in unpaid assessments from Shed and, if not paid by Shed, to recover that amount from the supersedeas bond. All other claims for relief, including CTCA's motion for release of supersedeas bond, was denied. However, execution under this order was suspended by the trial court pending review by this Court.

cancelled. After a bench trial on the issue of due process, the trial court entered judgment that the Haedge group take nothing by the suit.

The Haedge group appealed the trial court's judgment and filed a motion to suspend enforcement of the trial court's judgment during the pendency of the appeal. After holding a hearing on the motion to suspend, the trial court entered an order that the Haedge group could suspend enforcement of the judgment by posting a $2,500 supersedeas bond. In response to the trial court's bond order, CTCA filed a motion with this Court challenging the trial court's decision to allow a bond to suspend enforcement of a take-nothing judgment and, alternatively, challenging the amount of the bond set by the trial court. This Court determined that it was appropriate for the trial court to allow the Haedge group to supersede the take-nothing judgment. *Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 07-15-00368-CV, 2016 Tex. App. LEXIS 2311, at *6-8 (Tex. App.—Amarillo Mar. 3, 2016, order) (per curiam). However, we also determined that, to adequately protect CTCA, it was necessary to increase the amount of the supersedeas bond to $132,400. *Id.* at *8-9. We based this amount on the evidence presented by the parties at the hearing before the trial court that it would cost the Haedge group approximately $66,200 per year to lease alternative land upon which to graze their cattle. *Id.* We expressly stated that we expected the appeal to be resolved within two years but that, if the appeal were to fail to reach resolution within this timeframe, the trial court retained continuing jurisdiction to modify the amount of security required to suspend enforcement of the judgment. *Id.* at *9 n.4. The Haedge group and their surety, Insurors Indemnity Company, timely posted a supersedeas bond in the amount of $132,400.

Subsequently, this Court affirmed the trial court's take-nothing judgment. *See Haedge*, 2016 Tex. App. LEXIS 11092, at *29. The Texas Supreme Court denied the Haedge group's petition for discretionary review. *See Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 16-0956, 2017 Tex. LEXIS 873 (Tex. Sept. 22, 2017). We issued mandate on December 5, 2017, ordering that CTCA,

> recover of and from the supersedeas bond filed by [the Haedge group], and their surety, Insurors Indemnity Company, all cattle grazing fees and costs, if any, accrued during the pendency of the appeal not to exceed the amount of the supersedeas bond, as determined by the court below and consistent with this Court's order on supersedeas dated March 3, 2016 . . . .

Following this Court's issuance of mandate, the parties filed competing motions for release of the supersedeas bond. The trial court held a hearing on the motions on February 7, 2018. At this hearing, the Haedge group argued, for the first time, that CTCA was only entitled to any unpaid shareholder assessments that had been made against the Haedge group during the pendency of the appeal. After issuing an order that was inadvertently not final, the trial court entered a final order on July 17, 2018, that found Clinton Shed to be liable to CTCA in the amount of $7,000 in unpaid assessments and ordered that Shed pay this amount or authorizing CTCA to obtain this recovery from the supersedeas bond. Because CTCA immediately perfected the present appeal to challenge the trial court's order, the trial court ordered that execution on its order be suspended pending resolution of this matter by this Court.

By its appeal, CTCA presents two issues. Its first issue contends that the trial court erred in failing to enforce this Court's December 5, 2017 mandate. Its second issue contends that the trial court reached the wrong conclusion regarding the damages

4

suffered by CTCA because the trial court improperly ignored CTCA's evidence of damages.

## Standard of Review

A judgment debtor is entitled to supersede and defer payment of a judgment while pursuing an appeal. *Miga v. Jensen*, 299 S.W.3d 98, 100 (Tex. 2009). We are authorized by Texas Rule of Appellate Procedure 24.4 to engage in a limited review of issues relating to the setting of a supersedeas bond. *See* TEX. R. APP. P. 24.4. After the trial court in the present case set the bond to suspend enforcement of its judgment at $2,500, this Court reversed the trial court's order and increased the amount of bond necessary to supersede the judgment to $132,400. *Haedge*, 2016 Tex. App. LEXIS 2311, at *9.

Generally, we review supersedeas rulings under an abuse of discretion standard. *See Drake Interiors, Inc. v. Thomas*, 531 S.W.3d 325, 328 (Tex. App.—Houston [14th Dist.] 2017, order) (per curiam); *EnviroPower, L.L.C. v. Bear, Stearns & Co.*, 265 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (op. on en banc order). A trial court abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case, or when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997), and *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). However, when the trial court's ruling turns on a question of law, we review the ruling de novo. *Drake Interiors, Inc.*, 531 S.W.3d at 328.

"When an appellate court affirms a trial court's judgment or renders a judgment which the trial court should have rendered, that judgment becomes the judgment of both courts." *Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex. 1987) (op. on reh'g). Generally, mandate issues after appellate remedies have been exhausted or are barred by the passage of applicable deadlines. *See* TEX. R. APP. P. 18.1. Mandate is "a formal command requiring the lower court to comply with the appellate court's judgment." *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.). The trial court must observe and enforce the appellate court's mandate. *Id.* The scope of a mandate is determined by reference to the appellate court's opinion as well as the mandate itself. *Id.* Because the trial court's take-nothing judgment did not address release of the supersedeas bond, our mandate authorized the trial court to conduct further proceedings to resolve that issue. *See id.* at 145.

Analysis

As previously identified, this Court's mandate ordered that CTCA,

> recover of and from the supersedeas bond filed by [the Haedge group], and their surety, Insurors Indemnity Company, all cattle grazing fees and costs, if any, accrued during the pendency of the appeal not to exceed the amount of the supersedeas bond, as determined by the court below and consistent with this Court's order on supersedeas dated March 3, 2016 . . . .

Further, it is clear from our opinion that we carefully considered the damages that might be incurred by CTCA during the pendency of the appeal and determined that the cost of alternative grazing lands would represent the damages to CTCA during the pendency of the appeal. This amount represents the "cost" to CTCA of being put in the position of being required to forego the use of the Haedge group's 203.5 shares representing 325

6

head of cattle. The parties agreed at the initial supersedeas hearing that it would cost the Haedge group approximately $66,200 per year to graze their cattle on alternative land, assuming they could find alternative pastures. *Haedge*, 2016 Tex. App. LEXIS 2311, at *2-3. This Court set the amount of bond necessary to suspend enforcement of the trial court's take-nothing judgment in a manner that would protect CTCA's interests during the pendency of the appeal while also preventing the Haedge group from incurring substantial expenses to remove their cattle from the Fort Hood property and find alternative pastures when an appellate reversal would have rendered all such expenses unnecessary. *Id.* at *7-8. Clearly, during the pendency of the appellate process, CTCA and its shareholders have been precluded from grazing 325 head of cattle on the Fort Hood property, while the Haedge group received the benefit of not having to incur the expense of removing their cattle from Fort Hood, finding alternative grazing land, and paying the fair market value amount of $66,200 per year for those grazing rights. And, the Haedge group received this benefit even though the trial court had rendered a take-nothing judgment against them.

When a judgment creditor claims to have suffered loss or damage resulting during the pendency of the appeal, the creditor bears the burden to prove the extent of their damages. *Whitmire v. Greenridge Place Apts.*, 333 S.W.3d 255, 263 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd) (op. on reh'g). Here, we conclude that CTCA proved the basis for their losses at the hearing to set supersedeas bond and that this basis was the value of the grazing rights that CTCA was denied by the Haedge group being allowed to continue to graze their cattle on the Fort Hood property during the pendency of the appellate process. After this Court issued mandate and the appellate process was

complete, CTCA proved that it was prevented from grazing approximately 325 head of cattle on the Fort Hood property for the period of July 10, 2015, when the trial court entered its take-nothing judgment on the Haedge group's suit, through December 5, 2017, when this Court issued mandate in the underlying appeal.[3] This constitutes sufficient evidence to prove that CTCA suffered $159,242.76 in damages during the pendency of the appeal as a result of the supersedeas.[4]

However, because CTCA's damages are being measured against the value of leasing alternative grazing land, any assessments that the Haedge group paid during the pendency of the appeal must be credited against CTCA's damages since assessments are the equivalent of rental payments paid by CTCA shareholders. The evidence presented at the hearing to release the supersedeas bond established that the Haedge group paid $44,962.50 as assessments during the pendency of the appeal. The amount actually paid by the Haedge group should be offset against damages based on the value of the grazing rights that the supersedeas bond denied CTCA. As a result, the $159,242.76 in damages suffered by CTCA must be decreased by the $44,962.50 paid

---

[3] Our mandate provided that CTCA recover from the supersedeas bond "all cattle grazing fees and costs, if any, accrued during the pendency of the appeal . . . ." By this language, we simply intended to identify that a fact issue existed as to what, if any, damages were caused to CTCA during the pendency of the appeal. The evidence presented by CTCA at the hearing on release of the supersedeas bond established that the Haedge group continued to hold and exercise the right to graze 325 head of cattle on the Fort Hood property from July 10, 2015, through December 5, 2017. This was sufficient evidence to establish the "cattle grazing fees and costs . . . accrued during the pendency of the appeal . . . ."

[4] This amount is calculated as follows. There were two years between July 10, 2015, and July 9, 2017, resulting in a total of $132,400 in damages. There were 148 days between July 10, 2017, and December 5, 2017. $66,200 divided by 365 days in a year results in a charge of $181.37 per day. Thus, CTCA was damaged $26,842.76 from July 10, 2017, through December 5, 2017. Adding these mounts together results in $159,242.76 in damages to CTCA.

by the Haedge group, resulting in total awardable damages caused by the supersedeas of $114,280.26.

CTCA seems to claim entitlement to assessments that were owed by the Haedge group at the time of the trial court's entry of judgment and that the Haedge group failed to pay after our issuance of mandate but that covered periods prior to our issuance of mandate. As indicated above, our determination of damages caused CTCA by the suspension of their ability to execute on the judgment during the pendency of the appeal is equal to what the Haedge group would have been required to pay for the use of alternative grazing land, so, since CTCA is recovering the fair market value for the Haedge group's proportional share of grazing rights on Fort Hood, CTCA is not also entitled to the Haedge group's assessment payments. Awarding CTCA such assessments on top of the fair market value of the Haedge group's grazing rights would be to award a windfall to CTCA.

The Haedge group contends that the only damages suffered by CTCA as a result of the supersedeas is limited to any unpaid assessments made against the shareholders during the pendency of the appeal. Their argument contends that, under the rules of CTCA, if the judgment had been executed and the Haedge group's shares had been returned to CTCA, CTCA would have been obligated to issue those shares to either a current member of CTCA or to a new member. The new shareholder would then only be obligated to pay any assessments that were made, so the only damages suffered by CTCA are any assessments made during the period when the judgment was suspended that were not paid by the Haedge group. However, central to the Haedge group's argument is the proposition that only damages suffered by CTCA, as an association, are

9

recoverable against the supersedeas bond and, since CTCA cannot graze cattle on the Fort Hood property, its only damages were any unpaid assessments.

Initially, we must note that the underlying lawsuit was brought by the Haedge group seeking to invalidate CTCA's cancellation of their shares. As such, it is disingenuous for the Haedge group to now argue that CTCA cannot assert damages suffered by its members when the Haedge group did not include CTCA's members in its suit.

Nonetheless, an association can claim damages on behalf of its members when its members would have standing to assert the claim in their own right, the interests sought to be protected are germane to the association's purpose, and proof of damages will not require the participation of each individual member. *Concerned Owners of Thistle Hill Estates Phase I, LLC v. Ryan Road Mgmt., LLC*, No. 02-12-00483-CV, 2014 Tex. App. LEXIS 3929, at *10 (Tex. App.—Fort Worth Apr. 10, 2014, no pet.) (mem. op.) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), and *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993)). In the present case, it is clear that the shareholders of CTCA would have had standing to claim damages against the Haedge group. The purpose behind the formation of CTCA was to hold and protect the lease of the Fort Hood property making managing shareholder affairs germane to CTCA's purpose. Finally, the individual shareholders did not need to prove their individual damages because the loss of grazing rights suffered by CTCA and its shareholders as a result of the supersedeas was easily determined by reference to the shares that the Haedge group was allowed to use while the appeal was pending. As such, we conclude that CTCA has associational standing in this case and that it may claim damages on behalf of its individual shareholders.

10

We agree with the Haedge group that, during the pendency of the appeal, nothing changed and the Haedge group was treated as if they remained shareholders in CTCA. However, they were only treated in this manner because they had superseded the judgment affirming CTCA's cancellation of the Haedge group's shares. Giving the Haedge group the benefit of membership within CTCA after their shares were validly cancelled and solely due to suspension of the trial court's judgment affirming the cancellation would provide a windfall to the Haedge group and deprive CTCA the full use of the grazing rights afforded it by its leasehold of the Fort Hood property. This would thwart the very purpose of the supersedeas process.

## Conclusion

For the foregoing reasons, we reverse the trial court's July 17, 2018 Order on Plaintiff's Motion for Release of Bond and render judgment that CTCA recover $114,280.26 from the supersedeas bond posted by the Haedge group and their surety, Insurors Indemnity Company. *See* TEX. R. APP. P. 43.2(c).


Judy C. Parker
Justice