**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00081-CV**
_____

**IN RE SAMSON EXPLORATION, LLC, F/K/A SAMSON LONE STAR, LP**

**Original Proceeding**
**60th District Court of Jefferson County, Texas**
**Trial Cause No. B-173008-A**

**MEMORANDUM OPINION**

In a petition for a writ of mandamus, Samson Exploration, LLC (f/k/a Samson Lone Star, LP) complains the trial court abused its discretion by signing an order refusing Samson's tender of a deposit to pay what it owed on the judgment (with interest) into the court's registry while preserving its right to challenge the judgment in an appeal. In the petition, Samson raised three arguments. First, it claimed the trial court abused its discretion by denying Samson's motion rejecting Samson's tender of the funds into the court's registry. Second, it argued the trial court abused its discretion by refusing to release the entity that posted the supersedeas bond. And

1

last, it argues the trial court abused its discretion by refusing to release the surety from its obligations under the bond.

In response to the petition, the Real Parties in Interest[1] argue that Samson has not shown it is entitled to relief against the District Clerk and has not shown it has a right to have the supersedeas bond released given Samson's impending appeal of the trial court's judgment to the Texas Supreme Court. After considering the parties' arguments, we conclude Samson has shown it is entitled to relief on its complaint that the trial court refused to grant its motion to allow it to deposit funds to satisfy the judgment obtained against it by the Real Parties in Interest. As to that claim, we conclude Samson has no remedy through an ordinary appeal since it has no other way to stop the accrual of post-judgment interest at the contracted rate while Samson prosecutes its appeal to the Texas Supreme Court. But we deny relief as to Samson's remaining claims.

The Law is Settled

Twenty years ago, the Supreme Court of Texas made it clear that a judgment debtor has a right to pay a judgment while pursuing an appeal.[2] In *Miga* I, the

---

[1]The petition identifies the real parties Jana Bordages, Joseph A. Bordages III, Scott Alan Bordages, P. Bordages Heirs Account. A, L.P., Mary Patricia Carlisi, and Carlisi et al., Don W. Heisig, Piper Heisig, J.J. Johns Land Trust, Stephanie Bordages Knobel, Allison Bordages Koskella, J.B. Matthews LLC, Sister Raphael Bordages Trust, Sister Emily Bordages Trust, Sister Marie Bordages Trust; and Sister Frances Marie Bordages Trust.

[2]*Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (*Miga* I).

Supreme Court made it clear that in Texas, the "rule is not, and never has been, simply that any payment toward satisfying a judgment, including a voluntary one, moots the controversy and waives the right to appeal that judgment."[3] Then, the Court explained that when a judgment debtor pays a judgment and does so while expressing an intent to pursue an appeal, the judgment debtor preserves and does not waive the right it has to contest the judgment by exercising its right to appeal.[4] Instead, the Court explained, the post-judgment interest the judgment creditor earns on the judgment is the compensation the judgment creditor receives for having lost the opportunity to invest the money it was owed based on the amount represented by the judgment, pending the outcome of the appeal.[5] So when the judgment debtor unconditionally tenders money it owes into the registry, "there is no need for the continuing accrual of post-judgment interest."[6] If successful, the judgment debtor may then sue the judgment creditor and seek restitution.[7]

## Background

The judgment lying at the heart of this dispute resulted from a breach-of-contract case, a case with a long history of litigation and of appeals.[8] The

---

[3]*Id.*
[4]*Id.* at 212.
[5]*Id.*
[6]*Id.*
[7]*Miga v. Jensen*, 299 S.W.3d 98, 101-02 (Tex. 2009) (*Miga* II).
[8]*See Samson Expl., LLC v. Bordages*, ___ S.W.3d ___, No. 09-20-00174-CV, 2022 WL 120004 (Tex. App.—Beaumont Jan. 13, 2022, no pet. h.) (not yet

$13,133,120 judgment, signed in June 2020, accrues post-judgment interest at a rate based on the parties' written agreement of eighteen percent, per year. In July 2020, Samson superseded the judgment by posting a supersedeas bond. In January 2022, we issued an opinion affirming the trial court' judgment, concluding the lease's payment provisions (1) permitted compounding of late charges, (2) did not provide an exception to paying late charges on past due royalties, and (3) a bona fide dispute over title did not exist altering when royalties on the lease were due.[9] In February 2022, while we retained plenary power over the judgment, we issued a corrected judgment to add language requiring Samson Energy Company, LLC, which is Samson's surety, to perform the judgment since it is Samson's surety on the supersedeas bond.

Shortly before the Court issued its corrected judgment, Samson filed a motion in the trial court and asked the trial court for permission to deposit what Samson claimed to be the full amount it owed on the judgment into the registry of the court. Samson tendered $16,944,183.08 into the trial court's registry, an amount it claims

reported). *See also Samson Lone Star, Ltd. P'ship v. Hooks*, 389 S.W.3d 409 (Tex. App.—Houston [1st Dist.] 2012), *aff'd in part, rev'd in part Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52 (Tex. 2015), *on remand Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), *subsequent appeal Samson Expl., LLC v. Hooks*, No. 09-18-00390-CV, 2020 WL 5552143 (Tex. App.—Beaumont 2020, no pet.) (mem. op.); *see also Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 26 (Tex. App.—Beaumont 2015), *aff'd* 521 S.W.3d 766 (Tex. 2017).

[9]*See Bordages*, 2022 WL 120004, at *8.

represents what it owed under the judgment through January 26, 2022, two days after the date it filed its motion asking for the trial court's permission to deposit the money into the registry of the court. The Real Parties in Interest, however, refused to accept Samson's tendered deposit paying the judgment, even though Samson represented that it was willing to cooperate with the Real Parties in Interest should they seek to withdraw the funds after the money was paid into the registry of the court. Samson also stated that after depositing the funds into the court's registry, it intended to file a petition to review the judgment in the Texas Supreme Court and challenge the ruling and opinion of the Ninth Court of Appeals. And if Samson succeeded, Samson said it intended to sue the Real Parties in Interest and seek to recover the money it paid into the registry of the court.

In February 2022, the trial court conducted a hearing on Samson's motion. During the hearing, the Real Parties in Interest argued that *Miga* I and II allowed them a right to elect between forcing Samson to continue accruing interest on the judgment or to pay the judgment outright.[10] In the trial court, the attorney for the

---

[10]*See Miga* I, 96 S.W.3d at 211 ("Allowing Miga to choose, pending Jensen's appeal, between the continuing accrual of interest on $23.4 million and receipt of that $23.4 million outright is entirely consistent with the Finance Code."); *see also* Tex. Fin. Code Ann. § 304.005 ("(a) Except as provided by Subsection (b), postjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied. (b) If a case is appealed and a motion for extension of time to file a brief is granted for a party who was a claimant at trial, interest does not accrue for the period of extension.").

Real Parties in Interest explained: "We choose, in accordance with the *Miga* case, to continue accruing interest because the Supreme Court could take three or four months, it could take two or three years. We want to accrue 250,000 in interest per month while they're dillydallying around on this appeal." The attorney then said: "If [Samson's attorney's] are right that they don't owe any money, then they won't have to pay a penny of interest; but if they're wrong, they should have to pay postjudgment interest, per the statute, until the judgment is paid."

In response, Samson's attorney argued: "But [the] argument [by the Real Parties in Interest] is an argument for the day when we're determining the effect of putting the money in, whether you order more judgment interest on it or whatever the case may be, but that does not affect our essentially universal right to put the money in the registry of the court but the effect of that decision to be determined down the road." To put it simply, the Real Parties in Interest asked the trial court to allow the contract interest rate to remain in place, an advantage to them in the litigation given the high rate of interest they had in their contract and the large sum of money that Samson owed under the judgment, all accruing interest until paid at eighteen percent per year.

In February 2022, the trial court denied Samson's motion seeking an order to require the District Clerk to take funds Samson wanted to place in the registry of the court. Samson's tender, if Samson correctly calculated the amount it owed, a matter

that we need not decide, represents the principal and contract interest it was willing to voluntarily pay on the judgment as of January 26, 2022.

Later that month, Samson filed a second motion, this time asking the trial court to release Samson Exploration, LLC (formerly known as Samson Lone Star, LP) from its obligations under the supersedeas bond that Samson Exploration had posted on Samson's behalf. The trial court conducted a hearing on that motion less than two weeks later, but the court then denied the motion and refused to release Samson Exploration, LLC as the surety on the bond.

Samson's Mandamus

In its petition for mandamus, Samson argues the trial court abused its discretion in refusing Samson's tender of nearly seventeen million dollars into the registry of the court. In response, the Real Parties in Interest insist that *Miga* I allows judgment creditors like the Real Parties in Interest to choose between allowing the judgment debtor to pay the judgment or to instead refuse to agree to payment so that the judgment will continue to accrue interest. To be sure, the parties have not agreed to much throughout the history of the litigation. That said, both agree that *Miga* I and II provide the guiding rules that govern a trial court's discretion in deciding whether a judgment debtor has taken the steps required to stop a judgment from accruing interest pending the outcome of an appeal. Even so, the parties disagree about how those rules as explained in *Miga* I and II apply to the facts before us here.

7

Candidly, differences exist between the facts before the Court in *Miga* I and II compared to what we have here. In *Miga* I, Jensen superseded the judgment by filing a $25 million supersedeas bond.[11] Shortly after the Court of Appeals issued its opinion in *Miga* I, the parties agreed to Jensen's unconditional tender of $23 million toward satisfying the judgment. The parties did not make any such agreement to the tender Samson offered here. In *Miga* I, the trial court signed an agreed order terminating the accrual of post-judgment interest on 23 million dollars of the judgment based on the payment Jensen made on the judgment, which reduced Jensen's bond by a like amount, and saved Jensen $1 million per year.[12] Then, Miga and Jensen both asked the Texas Supreme Court to review the ruling made by the appellate court in *Miga* I. And when the Texas Supreme Court resolved *Miga* I, the Court held that because Jensen notified Miga that he was planning to appeal before he tendered the money into the registry of the court, the Court determined that Jensen had not waived his right to appeal.[13] So while *Miga* I did involve an agreement between the parties on paying the judgment, the Court's opinion also did not hinge on Miga's and Jensen's agreement; instead, the focus in *Miga* I was whether

---

[11]*Miga* I, 96 S.W.3d at 210.
[12]*Id.*
[13]*Id.* at 211-12.

judgment debtor (Jensen) unconditionally tendered the funds when he paid them into the registry of the court.[14]

Samson established it made an unconditional tender here, even though its tender proved unsuccessful when the trial court signed an order denying Samson's motion to deposit $16,944,183.08 into the registry of the court. In the trial court and here, the Real Parties in Interest argue the trial court could refuse Samson's tender because Samson made what the Real Parties in Interest characterized in the trial court as a refundable deposit, meaning a deposit that Samson could get back should it prevail in its appeal to the Texas Supreme Court. Characterizing Samson's tender as a refundable deposit, the Real Parties in interest essentially argue the tender Samson made was not unconditional. But the argument lacks merit. Samson didn't ask the trial court to impose any obligation on the District Clerk or the Real Parties in Interest to refund the money should Samson win its appeal. Samson merely asked the trial court to allow Samson to deposit the money into the registry of the court while reserving its right to challenge the trial court's judgment on appeal, much like what Jensen did in *Miga* I.[15] Nor did Samson seek to deposit the funds into the

---

[14]*Id*. at 212 ("When a judgment creditor has received an unconditional tender of the money awarded, and may invest it as he chooses, there is no need for the continuing accrual of post-judgment interest.").

[15]*Id*. at 211.

registry rather than file a bond.[16] So should Samson prevail in the Texas Supreme Court in its appeal, it will need to sue the Real Parties in Interest or seek the trial court's permission before withdrawing the money from the registry of the court if the funds are still there.[17]

The Real Parties in Interest also argue that Samson, by petitioning for mandamus are asking that this Court issue a writ of mandamus against the District Clerk. That argument also lacks merit—it is simply not true. We note a district clerk has a ministerial duty to file a document when a document is properly presented to the clerk.[18] Had the trial court granted Samson's motion and had the District Clerk refused to accept Samson's deposit, Samson would have then had the right to ask the trial court to order the clerk to perform their ministerial duties by petitioning for mandamus relief in the trial court, not by petitioning for relief here.[19] But as the Real Parties in Interest know, that is not what happened here.

---

[16]*See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 491-92 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (a deposit instead of supersedeas bond is not by itself an unconditional tender that terminates the accrual of post-judgment interest).

[17]*See Miga* II, 299 S.W.3d at 101-02.

[18]*See* Tex. Gov't Code Ann. § 51.303 (a) ("The clerk of a district court has custody of and shall carefully maintain and arrange the records relating to or lawfully deposited in the clerk's office."); *Turrentine v. Lasane*, 389 S.W.2d 336, 337 (Tex. Civ. App.—Waco 1965, no writ) (county clerk's ministerial duty to file properly deposited record is enforceable in a mandamus proceeding filed in a district court).

[19]*See Metzger v. Jackson*, No. 01-10-00144-CV, 2010 WL 2991163, at *2 (Tex. App.—Houston [1st Dist.] July 29, 2010, pet. denied) (mem. op.) ("A district court has jurisdiction to issue a writ of mandamus in original proceedings against a

The motion Samson filed seeking to deposit funds into the registry of the court complies with local practices. And had the trial court granted Samson's motion, we are confident the District Clerk would have accepted the money Samson tried to deposit into the registry of the court. Moreover, in its petition, Samson did not seek an order from this Court directed at the District Clerk; instead, Samson asked this Court for relief from the order signed by the 60th District Court denying its motion. Under the circumstances, we conclude the benefits of reviewing the matter by mandamus outweigh the detriments to doing so.[20]

Last, Samson argues the trial court abused its discretion in denying its motion to release Samson Exploration, LLC (formerly Samson Lone Star, LP) from its obligations as the surety on the supersedes bond that Samson posted to supersede the judgment. We conclude Samson invited the trial court to make that error. When Samson was before the trial court, its attorney said: "We're not in any way limiting their argument to you down the road as to how much money they are owed. We will disagree with them, but it doesn't limit their ability to argue to you and I suppose you to agree with them." When the trial court chose to reject Samson's tender, it was

county official if the order falls within its jurisdiction and the law does not reserve original proceedings to another court."); *see also In re Simmonds*, 271 S.W.3d 874, 879 (Tex. App.—Waco 2008, orig. proceeding) (explaining that a court of appeals has "jurisdiction under our mandamus power to consider whether to order the district court to [require the District Clerk to file a lawsuit]").

[20]*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

11

never asked by the parties to decide what amount Samson owed under the judgment as of January 26, 2022, or whether Samson had calculated the correct amount of principal and interest owed as of January 26. As Samson noted, that could be argued later.[21] Concerning Samson's remaining arguments, we conclude that it has not shown the trial court abused its discretion in refusing to release the supersedeas bond and has not shown the trial court abused its discretion by refusing to release Samson Exploration, LLC (formerly Samson Lone Star, LP) as Samson's surety on the bond.

Conclusion

For the reasons explained above, we conditionally grant mandamus relief in part and deny mandamus relief in part. We are confident the trial court will vacate its order denying Samson's motion to deposit the full amount of the judgment into the registry of the court. A writ of mandamus will issue only if the trial court fails to comply. All other relief requested in Samson's petition for mandamus is denied.

PETITION CONDITIONALLY GRANTED IN PART; DENIED IN PART.

PER CURIAM

Submitted on March 21, 2022
Opinion Delivered April 21, 2022

Before Golemon, C.J., Kreger and Horton, JJ.

---

[21]We would note, however, that interest on judgments generally accrues until the judgment is satisfied. *See* Tex. Fin. Code Ann. § 304.005.