

# NUMBER 13-24-00450-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SOUTH TEXAS CRANE SERVICE, INC.,
SANDRA JOYCE VAUGHT,
JERRY YOUNG,
THOMAS RANDAL YOUNG,
TRY EQUIPMENT RENTALS, LLC,
AND YOUNG HEAVY HAULING, INC.,                    Appellants,

v.

COMMERCIAL CREDIT GROUP, INC.,                    Appellee.

## ON APPEAL FROM THE 267TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## OPINION ON MOTION FOR REVIEW OF SUPERSEDEAS ORDER

### Before Justices Silva, Peña, and Cron
### Opinion by Justice Cron

In this commercial lending dispute, appellants South Texas Crane Service, Inc.,

Sandra Joyce Vaught, Jerry Young, Thomas Randal Young, TRY Equipment Rentals,

LLC, and Young Heavy Hauling, Inc. (Judgment Debtors) appeal from a summary judgment entered in favor of appellee Commercial Credit Group, Inc. (Judgment Creditor) on its claims for breach of contract, possession of personal property, and foreclosure on real property. The judgment awards Judgment Creditor nearly $3.9 million in unpaid debt and default interest, the right to possess and sell personal property pledged as security, and the right to foreclose on real property pledged as security. Judgment Debtors filed negative net-worth affidavits, and the trial court determined that "no additional supersedeas or security is required" to suspend the entire judgment.

Judgment Creditor has filed a motion in this Court challenging that ruling. *See* TEX. R. APP. P. 24.4. Judgment Creditor acknowledges that the negative net-worth affidavits, which went unchallenged in the hearing below, are currently sufficient to suspend the money portion of the judgment. *See id.* R. 24.2(a)(1)(A). Judgment Creditor argues, however, that the trial court abused its discretion by failing to require Judgment Debtors to post sufficient security to protect Judgment Creditor's property interests in the collateral. *See id.* R. 24.2(a)(2). We grant Judgment Creditor's motion in part, vacate the trial court's November 8, 2024 bond order, and remand for further proceedings.

## I.    BACKGROUND

The parties entered into a series of secured loan agreements and guarantees whereby Judgment Debtors granted Judgment Creditor security interests in certain collateral, including commercial cranes, vehicles, and trailers, as well as a parcel of land. Judgment Debtors allegedly defaulted on their loan obligations, leading to the underlying litigation.

2

The trial court granted Judgment Creditor's motion for summary judgment and entered a final order that provides, in pertinent part, as follows:

> IT IS FURTHER ORDERED that [Judgment Creditor] be awarded $3,879,069.64 for actual damages constituting the total amount of unpaid debt and default interest.
>
> . . . .
>
> IT IS FURTHER ORDERED that [Judgment Debtors] or any other person or entity in possession of any personal property or other assets of [Judgment Debtors] used as collateral to secure the loan agreements be required to tender the personal property and assets to [Judgment Creditor] and permit [Judgment Creditor] to recover the personal property and assets covered by the liens.
>
> IT IS FURTHER ORDERED that [Judgment Creditor] be authorized to foreclose on its security interest in the real property contained in the Deed [of Trust], and the sheriff or constable be directed to seize and sell the real property in satisfaction of the unpaid debt in the Final Judgment.

Two days after Judgment Debtors filed their notice of appeal, Judgment Creditor sent Judgment Debtors notice that some of the personal property collateral would be sold at public auction. That same day, Judgment Debtors filed net-worth affidavits with the district clerk claiming that their liabilities exceeded their assets. Based on these negative net-worth affidavits, the trial court ordered the district clerk to immediately issue a writ of supersedeas suspending all collection efforts and execution on the judgment. The district clerk complied with the order, and Judgment Creditor canceled the auction.

Judgment Creditor filed a motion to vacate or modify the writ of supersedeas in the trial court, arguing that because the judgment awarded both money and an interest in personal and real property, the net worths of the Judgment Debtors were irrelevant to the amount of security necessary to suspend the portion of the judgment awarding Judgment

3

Creditor an interest in property.[1] Judgment Creditor submitted a supporting affidavit from its Regional Vice President, Justin Mock, who attested to the following facts: (1) the total fair market value of the personal property collateral is $702,000; (2) the "tax value" of the real property collateral is $270,454; (3) Judgment Debtors are in possession of two cranes pledged as collateral, and at least one of those cranes is being used in the Judgment Debtors' normal course of business; (4) the two cranes are collectively valued at $350,000, thereby representing nearly fifty percent of the total value of the personal property collateral; (5) continued use of the cranes causes wear and tear that depreciates the value of the collateral; and (6) the insurance policy that protected the cranes from loss or damage was canceled, and Judgment Debtors have not provided Judgment Creditor with proof that the cranes are currently insured, as required by the security agreements. Judgment Creditor requested that the trial court require Judgment Debtors to post security under Texas Rule of Appellate Procedure 24.2(a)(2) to protect its property interests in the collateral.

Judgment Debtors filed a response contending that the "primary nature" of the judgment is for money, and thus, their negative net-worth affidavits were sufficient to suspend the entire judgment. Alternatively, they argued that, given their negative net worths, requiring them to post any security would cause them substantial economic harm. *See id.* R. 24.2(b). Finally, as a second alternative argument, Judgment Debtors asserted that requiring them to post a security would interfere with their use of the operational crane

---

[1] Judgment Creditor additionally argued that the net-worth affidavits were deficient for various reasons and should be struck. *See* TEX. R. APP. P. 24.2(c)(2).

4

in the normal course of business. *See id.* R. 24.2(d).

At the beginning of the hearing on Judgment Creditor's motion, the parties agreed that the scope of the hearing should be limited to an initial determination about "the nature of the judgment" and whether Rule 24.2(a)(2) applied, along with testimony about the value of the collateral. Judgment Creditor also informed the trial court that it was reserving its right to conduct discovery and contest the validity of Judgment Debtors' claimed net worths at a later time. *See id.* R. 24.2(c)(2).

During argument, Judgment Debtors conceded that the judgment authorizes the Judgment Creditor to possess and sell the personal property collateral but argued that these property interests are merely "part of the money judgment" because the proceeds would be credited against the unpaid debt. According to Judgment Debtors, a judgment does not award an interest in property for purposes of supersedeas unless the property interest is "on top of the money owed." For those reasons, Judgment Debtors asked the trial court to find "that this is strictly a money judgment."

Judgment Creditor responded that Rule 24.2(a) does not present an either-or proposition because a judgment can be both for money and an interest in property. Judgment Creditor maintained that, in addition to money, the plain language of the judgment awarded an interest in property. Judgment Creditor asked the trial court to require Judgment Debtors to post a bond in an amount equal to the fair market value of the personal property collateral under Rule 24.2(a)(2)(B).[2] The trial court then heard

---

[2] Judgment Creditor did not address the portion of the judgment awarding it an interest in the real property collateral, there was no evidence offered on the rental value of such property, and Judgment Creditor has not addressed this portion of the judgment in its motion to this Court. *See* TEX. R. APP. P. 24.2(a)(2)(A).

5

testimony from Mock and Judgment Debtor Thomas Young, who, in addition to personally guaranteeing the subject loans, identified himself as the general manager of Judgment Debtors South Texas Crane Service, Inc. and Young Heavy Haul, Inc.

Mock's testimony largely tracked his affidavit. He explained that, prior to the litigation, Judgment Creditor seized seventeen pieces of collateral consisting of vehicles, trailers, and one crane (the collateral noticed for auction), but Judgment Debtors were still in possession of two other cranes pledged as collateral. Based on his twenty years of experience conducting foreclosure sales, the condition of the collateral, and the current market conditions for similar collateral, Mock assigned the following fair market values for the collateral: the collateral in Judgment Creditor's possession has a total fair market value of $352,000[3]; the nonoperational crane in Judgment Debtors' possession has a fair market value of $50,000; and the operational crane in Judgment Debtors' possession has a fair market value of $300,000. Mock confirmed that Judgment Creditor intends to sell the personal property collateral in partial satisfaction of the unpaid debt. He also testified that the loan documents require Judgment Debtor to provide Judgment Creditor with proof of insurance on the collateral and that Judgment Debtor had not provided a current certificate of insurance (COI) on either of the cranes in its possession "in years." Mock did not offer any testimony on the rental value of the real property pledged as collateral.

Young did not have an opinion on the value of the collateral in Judgment Creditor's possession because he had not recently inspected the items. But he opined that the

---

[3] Mock provided a separate fair market value for each of the seventeen pieces of collateral in Judgment Creditor's possession.

6

nonoperational crane has no value because it is missing critical components[4] and that the fair market value of the operational crane is $250,000. Like Mock, Young did not testify about the rental value of the real property pledged as collateral.

Young further testified that South Texas Crane uses the operational crane "on a weekly basis" to generate revenue for the company. He explained that customers hire South Texas Crane to perform "taxi work." Under this arrangement, rather than renting the crane to customers, South Texas Crane maintains possession and control over the crane by providing an operator who performs the necessary work. Young estimated that South Texas Crane generates 98% of its total revenue from performing taxi work with the operational crane. Without it, "[t]here would be no more South Texas Crane," according to Young. He also testified that the operational crane is integral to the services provided by Young Heavy Haul because the crane is sometimes used to load heavy equipment the company is hired to haul. Young estimated that 30–40% of the hauling company's business involves using the operational crane.

Young confirmed that the nonoperational crane is not insured but said insurance was unnecessary because, in his opinion, the crane has no value in its current condition. He testified, though, that the operational crane is currently insured, and the only reason Judgment Creditor had not been provided a COI is because it had failed to request one. Young did not produce the policy that allegedly covers the operational crane.

The trial court took the motion under advisement. On November 8, 2024, the trial

---

[4] It was uncontested that the crane was nonoperational because Judgment Creditor had previously seized the component parts referred to by Young.

7

court signed an order finding that "no additional supersedeas or security is required." The net effect of the trial court's order is that the Judgment Debtors have superseded the judgment without posting any security.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

A judgment debtor is entitled to supersede and defer payment of a judgment while pursuing an appeal. *Miga v. Jensen*, 299 S.W.3d 98, 100 (Tex. 2009). Texas Rule of Appellate Procedure 24.4 authorizes an appellate court to engage in a limited supersedeas review. *See* TEX. R. APP. P. 24.4. On any party's motion, we may review: (1) the sufficiency or excessiveness of the amount of security, (2) the sureties on a bond, (3) the type of security, (4) the determination whether to permit suspension of enforcement, and (5) the trial court's exercise of discretion in ordering the amount and type of security. *See id.* R. 24.4(a). We may require that the amount of a bond be increased or decreased and that another bond or security be provided. *See id.* R. 24.4(d). We may also require other changes in the trial court's order and remand for entry of findings of fact or for the taking of evidence. *See id.*

We generally review a trial court's supersedeas ruling for an abuse of discretion. *See EnviroPower, L.L.C. v. Bear, Stearns & Co.*, 265 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A trial court "abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case," or "when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See*

8

*Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 624 (Tex. 2005). A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Id.* However, to the extent the trial court's ruling turns on a question of law, our review is de novo. *Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, 695 S.W.3d 446, 455 (Tex. App.—Houston [1st Dist.] 2023, order), *dis. on merits*, 695 S.W.3d 446, 464 (Tex. App.—Houston [1st Dist.] 2023, pet. filed).

Among other methods, a judgment debtor may supersede a judgment by filing a "good and sufficient bond," the amount of which is determined by Rule 24.2. *See* TEX. R. APP. P. 24.1(a)(2), (b)(1)(A). Rule 24.2 places judgments into three general categories—money, property, and other—with each category having its own guidelines about the necessary amount of security to supersede the judgment. *See id.* R. 24.2(a)(1)–(3). Only the first two categories apply in this case. "When the judgment is for money, the amount of the bond, deposit, or security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment." *Id.* R. 24.2(a)(1); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a). However, "the [security] amount must not exceed the lesser of: (A) 50 percent of the judgment debtor's current net worth; or (B) 25 million dollars." TEX. R. APP. P. 24.2(a)(1); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b). Stated differently, Rule 24.2 sets a ceiling on the amount of security the judgment debtor must provide to supersede a judgment for money. *See* TEX. R. APP. P. 24.2(a)(1).

Conversely, Rule 24.2 sets a mandatory floor "[w]hen the judgment is for the recovery of an interest in real or personal property." *See id.* R. 24.2(a)(2). "The amount

9

of that security must be at least: (A) the value of the property interest's rent or revenue, if the property interest is real; or (B) the value of the property interest on the date when the court rendered judgment, if the property interest is personal." *Id.* R. 24.2(a)(2)(A)–(B).

Upon a proper showing, the trial court must lower the security amount required under either category "to an amount that will not cause the judgment debtor substantial economic harm." *Id.* R. 24.2(b). A judgment debtor seeking relief under Rule 24.2(b) bears the burden of demonstrating substantial economic harm if the amount of security is not decreased. *Drake Interiors, Inc. v. Thomas*, 531 S.W.3d 325, 328 (Tex. App.—Houston [14th Dist.] 2017, order), *disp. on merits*, 544 S.W.3d 449 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In granting relief under Rule 24.2(b), the trial court must, after providing notice to all parties and holding a hearing on the matter, find that requiring the amount under Rule 24.2(a) "is likely to cause the judgment debtor substantial economic harm." TEX. R. APP. P. 24.2(b). The inquiry should focus "on the judgment debtor's actual ability to post the security required." *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 917 (Tex. App.—Houston [14th Dist.] 2005, order), *disp. on merits*, 207 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Finally, Rule 24.2 also permits the trial court to "enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment." TEX. R. APP. P. 24.2(d). Nevertheless, "the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business." *Id.*

10

## III. ANALYSIS

### A. Rule 24(a)(2) Applies

To put it succinctly, as the parties did below, our analysis turns on "the nature of the judgment" and the operation of Rule 24.2(a), which is a question of law. *See Senior Care Living*, 695 S.W.3d at 455. Judgment Debtors maintain that the "primary nature" of the judgment is for the recovery of money, and therefore, their negative net-worth affidavits were sufficient to suspend the entire judgment, including the portions awarding an interest in property. Yet, Judgment Debtors have not cited any cases where a judgment that awards an interest in property was superseded under Rule 24.2(a)(1), and we have found none.

On the other hand, it is not unusual for a judgment to award both money and an interest in property. In cases where different types of relief are awarded, like this one, courts generally take a siloed approach, analyzing the sufficiency of the security for each portion of the judgment according to the corresponding provision under Rule 24.2(a). *See, e.g., Ahlgren v. Ahlgren*, No. 13-22-00029-CV, 2022 WL 1260190, at *4–5 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2022, order) (mem. op.) (applying Rule 24.2(a)(1) to the money portion of the judgment and Rule 24.2(a)(2)(B) to the portion awarding an interest in personal property); *Butler v. Kaur Holdings, LLC*, No. 08-15-00232-CV, 2015 WL 7348970, at *1–2 (Tex. App.—El Paso Nov. 20, 2015, order) (mem. op.) (rejecting judgment debtor's argument that his negative net-worth affidavit suspended the entire judgment because "[§] 52.006(a) and Rule 24.2(a)(1) apply to the portion of the judgment awarding to Kaur Holdings unpaid rent in the amount of $2,687.10, but these provisions

11

do not apply to the portion of the judgment awarding Kaur Holdings possession of the property"); *Kanan v. Plantation Homeowners Ass'n*, No. 13-11-00282-CV, 2012 WL 593067, at \*4–5 (Tex. App.—Corpus Christi–Edinburg Feb. 21, 2012, order) (mem. op.) (applying Rule 24.2(a)(2) to the property portion and Rule 24.2(a)(3) to the injunctive portion).

The fact that the Judgment Creditor intends to sell the collateral to partially satisfy the money portion of the judgment does not diminish or alter its property interest in the collateral. *See Hibernia Energy III, LLC v. Ferae Naturae, LLC*, 668 S.W.3d 771, 772, 775 (Tex. App.—El Paso 2022, order) (Rule 24.2(a)(2)(A) applied to a judgment for foreclosure on a judgment lien that incumbered a mineral lease); *see also Brady v. Compass Bank*, No. 04-19-00021-CV, 2019 WL 1459257, at \*1–2 (Tex. App.—San Antonio Apr. 3, 2019, order) (mem. op.) (Rule 24.2(a)(2)(A) applied to a judgment ordering foreclosure on a home equity loan). To hold otherwise would effectively turn Judgment Creditor into an unsecured creditor for the duration of the appeal. That is particularly troubling here because South Texas Crane and Young Heavy Haul continue to use the most valuable piece of collateral on a regular basis, and without a bond or some other form of security, Judgment Creditor would not be able to recover any diminution in the crane's value should Judgment Creditor ultimately prevail on appeal.[5] *See Adams v. Godhania*, 635 S.W.3d 454, 458 (Tex. App.—Austin 2021, pet. denied) (explaining that recovery on a supersedeas bond is conditioned on a showing of damages incurred during the pendency of the appeal).

---

[5] Judgment Creditor also argues that limiting protections for secured lenders will increase the credit risk for lenders, ultimately leading to fewer loans and worse terms for borrowers.

At bottom, Judgment Debtors are asking this Court to engraft an exception onto Rule 24.2 that simply does not exist in the text. Under the plain language of Rule 24.2, the amount of security required to suspend a judgment awarding an interest in personal property "must be at least . . . the value of the property interest on the date when the court rendered judgment." TEX. R. APP. P. 24.2(a)(2)(B); *see also Johnson v. Villatoro*, No. 14-18-00150-CV, 2018 WL 3848070, at *1 n.2 (Tex. App.—Houston [14th Dist.] Aug. 14, 2018, order) (mem. op.) (rejecting judgment debtor's argument that his negative net worth should suspend a judgment for possession of real property because Rule 24.2(a)(1) only applies "to the amount of security necessary to suspend enforcement of a money judgment, not a judgment for recovery of an interest in property"); *Butler,* 2015 WL 7348970, at *1–2. The trial court's failure to follow that statutory directive was an abuse of discretion. *See Gonzalez*, 159 S.W.3d at 624.

## B.     Substantial Economic Harm was not Considered or Proven

Judgment Debtors also argue that we should deny Judgment Creditor's motion because they demonstrated substantial economic harm. *See* TEX. R. APP. P. 24.2(b). To begin, the question of substantial economic harm was not presented to the trial court. The parties agreed to litigate the supersedeas issue in a sequential order by limiting the hearing to an initial determination on the "nature of the judgment" and the value of the personal property collateral. In other words, the purpose of the hearing was to first determine the amount of security required by Rule 24.2(a), and because the trial court kept the security amount at $0, it was not necessary for the trial court to determine whether to "*lower* the amount of security required by (a)" based on a finding of substantial

13

economic harm. *See id.* R. 24.2(b) (emphasis added); *Senior Care Living*, 695 S.W.3d. at 458 ("Because the trial court concluded that Senior Care's $10.00 deposit in lieu of bond was sufficient to supersede the judgment pending appeal, the question whether some other bond amount pursuant to Rule 24.2(a) would cause Senior Care substantial economic harm was never properly before the trial court."). Indeed, the trial court's order does not contain a finding of substantial economic harm; it merely states that that "no additional supersedeas or security is required." *See* TEX. R. APP. P. 24.2(b) (requiring the trial court to find that the amount required under Rule 24.2(a) would cause substantial economic harm).

Nevertheless, Judgment Debtors claim that their negative net-worth affidavits are sufficient to show that they would suffer substantial economic harm if they were required to post security in the amount required by Rule 24.2(a). While we agree that a negative net worth could be relevant to a substantial-economic-harm inquiry, the affidavits filed in this case only show that Judgment Debtors' liabilities exceed their assets. There is no evidence in the record that Judgment Debtors attempted to obtain a bond or that they are incapable of raising the funds to pay for a bond.[6] *See Ramco Oil*, 171 S.W.3d at 918

---

[6] One of our sister courts has suggested the following line of inquiry when considering a claim of substantial economic harm:

> *How much cash or other resources would it take to post a supersedeas bond in the amount in question? Does the judgment debtor have sufficient cash or other assets on hand to post a supersedeas bond in this amount or to post a deposit in lieu of bond in this amount? Does the judgment debtor have any other source of funds available? Does the judgment debtor have the ability to borrow funds to post the requisite security? Does the judgment debtor have unencumbered assets to sell or pledge? What economic impact is such a transaction likely to have on the judgment debtor? Would requiring the judgment debtor to take certain action likely trigger liquidation or bankruptcy or have other harmful consequences?*

*Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 917 (Tex. App.—Houston [14th

14

(affirming a determination of no substantial economic harm in part because the judgment creditor "introduced no evidence of any efforts on their part to obtain a supersedeas bond or of what the premium, other costs, and required collateral, if any, would be to obtain a supersedeas bond"); *see also Premier Pools Mgmt. Corp. v. Premier Pools, Inc.*, No. 05-14-01388-CV, 2015 WL 465168, at *3–4 (Tex. App.—Dallas Feb. 4, 2015, order) (mem. op.) (affirming a refusal to find substantial economic harm because "there was no evidence as to the cost to obtain a bond much less that they even made an attempt to obtain a bond"). Consequently, Judgment Debtors failed to carry their burden of proving substantial economic harm. *See Drake Interiors*, 531 S.W.3d at 328. To the extent the trial court made its ruling based on an implicit finding of substantial economic harm, it abused its discretion. *See Gonzalez*, 159 S.W.3d at 624.

## C. Rule 24.2(d) Does Not Apply

Finally, Judgment Debtors contend that Rule 24.2(d) also prevents the trial court from setting a bond in the amount required under Rule 24.2(a)(2) because doing so would interfere with South Texas Crane and Young Heavy Haul's use of the operational crane "in the normal course of business." *See* TEX. R. APP. P. 24.2(d). Judgment Debtors' reliance on Rule 24.2(d) is misplaced. Subsection (b) acts as the only escape hatch for the otherwise mandatory requirements of subsection (a), while subsection (d) concerns the trial court's limited authority to "enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment." *See id.* There is no such injunction in place, and Judgment Debtors' suggested construction of subsection (d) is

---

Dist.] 2005, order), *disp. on merits*, 207 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

incongruent with subsections (a) and (b). *See State v. Chacon*, 273 S.W.3d 375, 379 (Tex. App.—San Antonio 2008, no pet.) ("We also construe the statute as a whole and will not give one provision a meaning which is out of harmony or inconsistent with other provisions." (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002))).

Further, Judgment Debtors' premise is based on the unproven assumption that they could not post the required security under subsection (a) and would thus lose possession of the operational crane that accounts for 98% of South Texas Crane's revenue. Such an argument is properly raised in a claim of substantial economic harm, which, as explained above, has yet to be litigated. *See* TEX. R. APP. P. 24.2(b). We conclude that the trial court's failure to correctly apply Rule 24.2 to the judgment and facts in this case was an abuse of discretion. *See Gonzalez*, 159 S.W.3d at 624.

## D.      Need for Remand

Judgment Creditor asks us to require Judgment Debtors to post security in the amount of $702,000. *See* TEX. R. APP. P. 24.4(d). While Judgment Creditor presented uncontested evidence on the value of the personal property collateral in its possession, the trial court heard conflicting testimony about the fair market value of the two cranes in Judgment Debtors' possession and never resolved this factual dispute. Thus, we remand this matter to the trial court with instructions to take additional evidence to determine the fair market value of those two cranes, to set a bond in an appropriate amount based on Rule 24.2, to enter findings of fact in support of its bond setting, and to render any other

16

orders necessary to effectuate its bond setting.[7]  *See id.*

## IV.    CONCLUSION

We grant Judgment Creditor's motion in part, vacate the trial court's November 8, 2024 bond order, and remand for further proceedings consistent with our opinion.[8]

JENNY CRON
Justice

Delivered and filed on the
7th day of March, 2025.

---

[7] During this hearing, the trial court may also entertain evidence on the rental value of the real property pledged as collateral, *see* TEX. R. APP. P. 24.2(a)(2)(A), any challenges to the Judgment Debtors' net-worth affidavits, *see id.* R. 24.2(c), and any claims of substantial economic harm. *See id.* R. 24.2(b).

[8] All other pending motions related to supersedeas are dismissed as moot.